COLUMBRARIA LTD et al., Plaintiffs,

v.

Hugo PIMIENTA, et al., Defendant.

No. CIV.A.H–99–1652.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 18, 2000.

Marc F. Wiegand, Bracewell & Patterson, San Antonio, TX, for Plaintiff.

Lynne Liberato, Haynes and Boone, LLP, Houston, TX, Timothy M. Mc Closkey, Mc Closkey & Herberger, Houston, TX, Joel M. Androphy, Berg & Androphy, Houston, TX, for Hugo E. Pimienta and Rodolfo Garcia.

Joe William Meyer, Meyer Knight and Williams, Houston, TX, for Ramon E. Beteta De Cour (Third–Party Defendant).

## ORDER

HITTNER, District Judge.

Pending before the Court is the First Amended Motion to Dismiss Columbraria, LTD's Third–Party Complaint and First Amended Complaint Against Ramon Beteta for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, and Forum Non–Conveniens filed by defendant Ramon Beteta ("Beteta"). Having considered the motion, submissions, and applicable · law the Court determines that the motion to dismiss for lack of subject matter jurisdiction should be granted.

Columbraria is a Cayman Island Corporation owned by Eduardo Luque Rebollar and his daughter Anna Luque, both of whom are residents of Mexico. In January, 1994, Beteta was appointed President and Director of Columbraria, Ltd. in Mexico. At that time, Columbraria's principal asset was 858,000 shares of Sofamor/Danek, Inc. stock. Dr. Luque had invented a medical devise now extensively used in the medical fields. Dr. Luque assigned his patent in the invention to Sofamor–Danek, Inc., a company specializing in the same area of medical technology. In exchange for the assignment, Dr. Luque received 858,000 shares of Sofamor–Danek, Inc. shares (which is now known as Medtronic, Inc.).

In the summer of 1995, Beteta on behalf of Columbraria Ltd., entered into business discussions with Garcia and Pimienta, who were acting on behalf of defendant Interamericas Investments, Ltd, a Cayman Islands corporation with offices in Houston, Texas. Pimienta and Garcia indicated that Interamericas Investments had a cash flow shortage and wished to raise money by means of a short-term loan. The sum initially discussed was $5,000,000.00 and the period of the loan was for six months. Pimienta and Garcia devised a transaction whereby Columbraria's Sofamor/Danek shares would be used as a form of collateral for the loan. Columbraria would receive an annual interest payment. The method they proposed was a "collar transaction" whereby a stock broker sells a number of shares to raise funds, and at the same time taking put and call options at a later date for the same amount of the shares sold, thereby insuring that the shares can be subsequently reacquired with a minimum of financial risk.

Beteta presented the proposed transaction to Dr. Luque and obtained consent to perform the transaction. Beteta prepared corporate documents authorizing him to perform the transaction and executed a power of attorney in favor of defendants Pimienta and Garcia to implement the transaction. As part of the transaction, Anna Luque physically transferred the Sofamor/Danok shares of stock to Interamericas Investments. Thereafter, Pimienta called Beteta in Mexico and advised that he needed to open a Merrill Lynch account as part of the transaction. Pimienta forwarded to Beteta an account application form in order to open an account at Merrill Lynch and requested that Beteta execute the document. Beteta did so and returned the application to Pimienta. Pimienta and

Garcia opened the Merrill Lynch account in Houston, Texas. Interamericas Investments allegedly transferred the Sofamor/Danek shares to Merrill Lynch.

In July and August, 1995, the Sofamor/Danek stock was sold, a collar transaction was not put in place, and Interamericas Investments allegedly received the proceeds of the sale of the shares. The Sofamor/Danek stock was listed by Pimienta and Garcia as representatives of Interamericas Investments as being held by Integra Invests, an affiliated company of Interamericas Investments in an account under Columbraria's name. Over the next three years, Integra Invest forwarded monthly account statements to Beteta, showing that the stock was being held for Columbraria. Beteta in turn provided the statements to Dr. Luque.

In July, 1998, Beteta discovered that the Sofamor/Danok shares had been wrongfully sold and the proceeds invested within Interamericas Investments and its subsidiaries and affiliate companies.

Pimienta and Garcia filed a declaratory judgment action in this Court on May 27, 1999 against Columbraria, seeking a judgment that the sale of the stocks was legitimate. Columbraria filed an answer, third-party complaint against defendant Beteta and motion to realign parties. On January 4, 2000 the Court realigned the parties with Columbraria as the plaintiff and Pimienta and Garcia as defendants. On October 18, 1999, Beteta filed a declaratory judgment action in the Grand Court of the Cayman Islands, seeking declarations that he did not fail in his obligations as an officer and director of Columbraria.[1]

On February 17, 2000 Columbraria filed its first amended complaint asserting numerous claims against Beteta for the wrongful sale of the Safomor/Danek stocks. Columbraria has also filed a motion for leave to file second amended complaint and a motion to amend complaint against Beteta. All of the defendants oppose Columbraria's proposed amendments, as discussed further *infra*.

Beteta has filed a motion to dismiss arguing that this Court has no subject matter jurisdiction over this matter, no personal jurisdiction over Beteta, and that this case should be dismissed pursuant to the doctrine of forum non conveniens.

*Subject Matter Jurisdiction*

██ Federal courts are courts of limited jurisdiction. Unlike state courts, federal courts have no "inherent" or "general" subject matter jurisdiction. They can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate: those involving diversity of citizenship, federal question, or where the United States is a party to an action. *Kokkonen v. Guardian Life Insur. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Federal courts are presumptively without jurisdiction over civil actions and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Id.*

██ Columbraria originally alleged that subject matter jurisdiction was vested in this Court pursuant to diversity jurisdiction. Beteta argues that there is no diversity jurisdiction in this case. Specifically, Beteta states that the presence of foreign parties on both sides of litigation destroys diversity if there is no citizen of the United

---

1. In the Cayman Islands action, Columbraria filed an Application to Stay the Action on the basis that the Cayman Islands court was not the appropriate forum to determine the issues between Columbraria and the Beteta. Columbraria argued that this Court was the more appropriate forum. However, on April 2000, in a 40–page opinion, the Cayman Islands court denied Columbraria's request, finding that:

> Having considered all of the factors which appear to me to be relevant, and even assuming that Texas is a competent forum, I am not satisfied that the courts in Texas are clearly or distinctly more appropriate than this Court or that the case can be tried in Texas more suitably for the interests of all parties and for the ends of justice.

States on each side of litigation. Thus, in this case, as Columbraria is a citizen of the Cayman Islands and Beteta is a citizen of Mexico, there exists a situation where there are foreign citizens on both sides of litigation but with no United States citizen on plaintiff's side.

■ 28 U.S.C. § 1332(a)(3) provides:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—

citizens of different states and in which citizens or subjects of a foreign state are additional parties.

This statute has been interpreted by the Fifth Circuit to mean that diversity jurisdiction exists under this provision only in a suit between citizens of different states with aliens as additional parties. *See Ed and Fred, Inc. v. Puritan Marine Insur. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir.1975). In this case, there is no citizen of the United States present on the plaintiff's side of litigation. Accordingly, there is no diversity jurisdiction present pursuant to 28 U.S.C. § 1332(a)(3).

■ In an apparent attempt to remedy the clear defect in diversity subject matter jurisdiction, Columbraria has moved to amend its complaint to assert federal claims pursuant to the federal Racketeering Influence Corrupt Organizations ("RICO") and pursuant to Rule 10b–5 of the federal securities laws.

■ Fed.R.Civ.P. 15(a) states, in relevant part, that leave to amend shall be given freely "when justice so requires." The policy of allowing parties to amend freely is tempered by several considerations. The Fifth Circuit has stated that a district court determining whether to grant leave to amend may consider factors such as delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, and futility of

amendment. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir.1993).

Beteta argues that Columbraria's proposed amendments to its complaint should not be permitted as these amendments would be futile. First, with respect to Columbraria's proposed amendment to add a RICO claim, Beteta argues that a claim for the wrongful sale of securities cannot include a RICO cause of action. Pursuant to 18 U.S.C. § 1964(c)

Any person injured in his business or property by reason of a violation of section 1962 of this Chapter may sue therefore in any appropriate United States District Court and shall recover three fold the damages he sustains and the costs of the suit, including a reasonable attorney's fee, **except no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of Section 1962.** (emphasis added).

■ Beteta alternatively argues that amendment to add a RICO claim would be futile because Columbraria cannot establish one element of such a claim: a pattern of racketeering activity. To state a RICO claim, a plaintiff must allege: (1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant was 'employed by' or 'associated with' the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity. Beteta contends that as RICO was designed to address a pattern of fraudulent activity, it does not apply to a single fraudulent scheme, as alleged by Columbraria. *See International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir.1987) (no RICO claim exists where defendants engaged in one continuing scheme).

In response to the defendants' objections to Columbraria's proposed amendments, Columbraria first argues that the Private Securities Litigation Reform Act

("PSLRA"), which amended the RICO statute, does not bar the RICO claims because the PSLRA does not apply retroactively. Prior to the amendment of the PSLRA on December 22, 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in fraud. In 1995, Congress enacted the PSLRA, which amended RICO to disallow lawsuits that would have been actionable as fraud in the purchase or sale of securities as a predicate act for a RICO action. 18 U.S.C. § 1964(c).

The PSLRA took effect on December 22, 1995. According to Columbraria, a critical element of the RICO action—the sale of the Sofamor–Danek Stock—took place in July and August, 1995, prior to the enactment of the PSLRA. Columbraria thus argues that the enactment of the PSLRA cannot be applied retroactively to bar Columbraria's proposed RICO claim.

■ In response, Beteta argues that while it is true that the PSLRA does not apply to cases actually pending as of the date of enactment, the statute does apply to cases filed after its enactment. This is a case of first impression in this Circuit. However, according to Beteta, the overwhelming case authority in other circuits concludes that the PSLRA applies to a complaint filed after its enactment, such as the one in this case. *See e.g. Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir.1997) (plaintiff's Ponzi scheme claims are clearly barred unless they were pending on the enactment date of December 22, 1995 since the clear text of the statute states that only pending cases excluded from its effect); *Havenick v. Network Exp. Inc.*, 981 F.Supp. 480 (E.D.Mich.1997); *Krear v. Malek*, 961 F.Supp. 1065 (E.D.Mich.1997); *Rowe v. Marietta Corp.*, 955 F.Supp. 836 (W.D.Tenn.1997); *ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308 (S.D.N.Y.1997) (holding that the PSLRA bars fraudulent conduct which occurred prior to the PSLRA).

Section 108 of the PSLRA provides, in part:

The amendments made by this title shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, commenced or pending on the date of this Act.

Section 108 (Pub.L. No. 104–67, 109 stat. 737,758 (Dec 22, 1995)). Section 108 is silent as to whether or not the PSLRA applies to cases filed after the enactment date, but in which the facts giving rise to the cause of action occurred prior to enactment. Thus, the parties disagree as whether or not the proposed RICO claims would be barred, and therefore, whether amending the complaint to add a RICO claim would be futile.

According to the plaintiffs, applying the PSLRA retroactively to bar its proposed claims against the defendants would be violative of the well established principle that legislation will not be given retroactive application absent a clear expression of Congress' intent that the statute be so applied. *Citing Landgraf v. USI Film Prod.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (instructing that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic").

■ In *Landgraf*, the Court stated: "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based on prior law." *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483. The *Landgraf* Court further stated that a statute is deemed to have a retroactive effect only in the following circumstances: (1) the application of the statute would impair rights a party possessed when it acted; (2) the application would increase a party's liability for past conduct; and (3) the application would impose new duties with respect to completed transactions. *Id.* at 280, 114 S.Ct. 1483.

■ Plaintiff argues that application of the PSLRA would impair "rights" it possessed when it acted. "However, it has long been recognized that 'no person has a vested right in any general rule of law or policy of legislation entitling him to insist that it remain unchanged for his benefit.'" *ABF Capital*, 957 F.Supp. at 1320 (citing *Chicago & Alton R.R. v. Tranbarger*, 238 U.S. 67, 76, 35 S.Ct. 678, 59 L.Ed. 1204 (1915)). As stated in *ABF Capital*, "a cause of action that has not been reduced to a final judgment is not a "vested right."" *ABF Capital*, 957 F.Supp. at 1320–21.

Plaintiffs cite no law holding that the elimination of a previously available remedy should not be applied to later filed cases because the conduct complained of occurred prior to the change in the law. Thus, the PSLRA does apply to this case. Columbraria's proposed amendment of its complaint to add a federal RICO claim would be futile as section 1964(c) specifically excludes cases involving fraud in the purchase or sale or securities.

■ Beteta next argues that Columbraria's proposed amendment of its complaint to add a federal claim pursuant to 10b–5 of the securities laws is also futile as these claims are barred by the applicable statute of limitations. A claim for a violation of Rule 10b–5 must be brought within three years of the alleged violation and within one-year of the "discovery of the facts constituting the violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). According to Beteta, Columbraria had actual notice of its claim against him in September, 1998. Columbraria did not file its initial pleading seeking relief from Beteta until November 5, 1999.

■ "The one-year statute of limitations applicable to suits under Rule 10b–5 begins to run not when the fraud occurs, and not when the fraud is discovered, but when (often between the date of occurrence and the date of the discovery of the fraud) the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation as the facts would induce in a reasonable person to file a lawsuit within one year … This is the doctrine known as 'inquiry notice.'" *Fujisawa*, 115 F.3d at 1334 (*citing Law v. Medco Research, Inc.*, 113 F.3d 781, 785 (7th Cir.1997)).

■ According to the plaintiff, it did not discover the alleged fraud by Beteta until November 6, 1998—the date that Interamericas informed Columbraria for the first time that "the investment of the proceeds was made with the knowledge and consent of the Directors of Columbraria and the representatives of the beneficial owners of the corporations [i.e. Beteta]." Beteta on the other hand argues that according to every complaint filed by Columbraria (including the proposed second amended complaint) Columbraria itself admits that it had actual notice of its claim against Beteta in September, 1998. The proposed second amended complaint against Beteta provides:

> In approximately September 1998 Beteta disclosed for the first time that the Safomor–Danek Stock had been sold and that the proceeds of such sales were unavailable to Columbraria. At the subsequent monthly account statement for Columbraria's account, issued by Integra Invest (Overseas), Ltd., showed that the remaining 798,400 shares of Sofamor–Danek Stock and the 2 Certificates of Deposit had been deleted from the account statement for Columbraria issued by Integra Invest (Overseas), Ltd.

*See* Columbraria's Proposed Second Amended Complaint at ¶ 23.

The issue before the Court is whether Columbraria's knowledge in September, 1998 that the Safomor–Danek shares had been sold, without Columbraria's permission, constituted sufficient "inquiry notice" for purposes of filing an action under Rule 10b–5. If the Court were to accept Columbraria's suggestion that the relevant date for purposes of the one-year statute

of limitations is November, 1998, this date would be the date the fraud was *actually* discovered. *Fujisawa* instructs that this date is not the appropriate reference point for purposes of Rule 10b–5's one-year limitations period. Thus, the Court determines that the September, 1998 date was the date when the Rule 10b–5 statute of limitations began to run as it was the date that Columbraria should have learned, through the exercise of ordinary diligence, enough facts to enable it by such further investigation as the facts would induce in a reasonable person to sue within a year. Accordingly, as Columbraria's proposed cause of action under Rule 10b–5 is time-barred, permitting an amendment of this claim would be futile.

As the plaintiff's proposed amendments to add federal claims would be futile, the Court will not permit such amendments. Thus, as there is no diversity jurisdiction in this case and no federal question jurisdiction present, the Court determines that it is without subject matter jurisdiction over this case.

Based on the foregoing, the Court

ORDERS that the Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED.