**ORTHOPAEDIC SURGERY ASSOCIATES OF SAN ANTONIO, P.A.,** Jesse C. DeLee, M.D., John A. Evans, M.D., Peter F. Holmes, M.D., Lawrence W. Trick M.D., David R. Schmidt, M.D., Philip M. Jacobs, M.D., Paul S. Saenz, D.O., and Mark M. Casillas, M.D., **Plaintiffs,**

v.

**PRUDENTIAL HEALTH CARE PLAN, INC.** a/k/a Prucare of San Antonio, **Defendant.**

**No. CIV A.SA00CA1529FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

May 11, 2001.

596

S. Mark Murray, Law Offices of S. Mark Murray, Inc., San Antonio, TX, for Orthopaedic Surgery Associates of San Antonio, P.A., Jesse C. DeLee, M.D., John A. Evans, M.D., Peter F. Holmes, M.D., Lawrence W. Trick, M.D., David R. Schmidt, M.D., Philip M. Jacobs, M.D., Paul S. Saenz, D.O., Mark M. Casillas, M.D., plaintiffs.

John Bruce Shely, Andrews & Kurth, L.L.P., Houston, TX, for Prudential Health Care Plan, Inc. aka Prucare of San Antonio, defendants.

## ORDER CONCERNING MOTION TO REMAND

BIERY, District Judge.

Before the Court is Plaintiff's Motion to Remand along with Defendant's Response and Plaintiff's Reply. Plaintiffs believe the case should be remanded because their claims are based entirely upon state law and are outside of any claimed benefits of an ERISA plan. Defendant maintains no matter how the claims are characterized, plaintiffs are seeking payment for services covered under the terms of ERISA plans, and therefore, the removal is proper.

According to their petition, plaintiffs entered into Speciality Care Physician Agreements with defendant Prudential, beginning in 1990, to provide services under Prudential coverage plans. Prudential agreed to pay the plaintiffs and/or their professional association, Orthopaedic Surgery Associates of San Antonio (OSASA), a specified sum of money for each of the selected services to be rendered. Although Prudential paid the plaintiffs for services rendered, Prudential did not pay the agreed upon amount and "shortchanged the physicians and OSASA on most, if not all of the services that were provided, paying them less than the amount that had been agreed upon by the parties." Plaintiffs claim Prudential breached its contract with them.

Defendant asserts, in its notice of removal, that plaintiffs' claims "relate to one or more employee benefit plans" established and maintained pursuant to ERISA. Some, if not all, of the medical services which are alleged to be unpaid, "were provided to participants or beneficiaries of ERISA plans." Therefore, the claims for the amounts allegedly owed seek "benefits payable under the terms of one or more ERISA plans and relate to such plans and fall within ERISA's civil enforcement provision and are completely preempted."

In their motion to remand, plaintiffs state they are not beneficiaries, participants, employees, employers, administrators, the Secretary, or fiduciaries of any ERISA plan. Plaintiffs claim they are not seeking to recover under any plan but are seeking to recover the amount contractually promised by the defendant for services rendered to participants, beneficiaries, and/or employees of plans sold to others by the defendant. Plaintiffs maintain they are not seeking to receive benefits under

the terms of an ERISA plan and their claims do not affect the relationship among the traditional ERISA entities such as plan administrator/fiduciaries and plan participants/beneficiaries. Defendant contends this distinction is one without legal significance.

In its response to the motion to remand, defendant argues the plaintiffs completely ignore the relationship between the parties and the contracts under which relief is sought, the fact the service agreements under which relief is sought only provide payment for "Covered Services," and plaintiffs previously accepted assignments of ERISA plan benefits from their patients and submitted claims to Prudential under those assignments. The challenge to the processing and payment of claims is, in fact, a derivative claim for benefits under ERISA plans and is therefore completely preempted under ERISA's civil enforcement provision and properly before this Court.

## JURISDICTION OF FEDERAL COURTS

■ It is well settled that federal courts are courts of limited jurisdiction and unlike state courts, are not vested with "inherent" or "general" subject matter jurisdiction. *Columbraria Ltd v. Pimienta*, 110 F.Supp.2d 542, 545 (S.D.Tex. 2000); *see Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)(federal courts are courts of limited jurisdiction; only possess power authorized by Constitution and statute); *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 1 L.Ed. 718 (1799)(federal courts are courts of limited jurisdiction; jurisdiction of state courts is general while jurisdiction of federal courts is special, "and in the nature of an exception from the general jurisdiction of the state courts"); *Langley v. Jackson State Univ.*,

14 F.3d 1070, 1073 (5th Cir.)(federal court is court of limited jurisdiction), *cert. denied*, 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). Because the limited jurisdiction of a federal court is not to be judicially expanded, the presumption is that "a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (citations omitted). Thus, defendant bears the burden of establishing its claims are federal in nature.

## ERISA PREEMPTION

■ Because there is no assertion that jurisdiction is based on diversity of citizenship, removal is proper only if a federal question exists. Ordinarily, removal is not allowed unless the plaintiff's well pleaded complaint asserts causes of action under federal law which support federal question jurisdiction. *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1017 (5th Cir.), *cert. denied*, 508 U.S. 956, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993). Federal preemption raised as a defense to the asserted causes of action does not generally authorize removal to federal court because it "does not appear on the face of a well pleaded complaint." *Id.* However, an exception to the well pleaded complaint rule exists where "Congress has so 'completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' Such a niche has been carved out by Congress for claims for benefits brought by participants and beneficiaries of ERISA-regulated employee benefit plans." *Id.*

■ As set forth in Section 514(a) of ERISA, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Hook v. Morrison Milling Co.*, 38

F.3d 776, 778–81 (5th Cir.1994). The "relate to" language is to be given a "broad yet common-sense meaning and a state law claim only relates to a benefit plan 'if it has a connection with or reference to' the ERISA plan." *Westbrook v. Beverly Enters.*, 832 F.Supp. 188, 190 (W.D.Tex.1993)(citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). However, despite the broad language, ERISA's preemptive scope is not without limits. *Hook*, 38 F.3d at 781. As set forth by the Supreme Court in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Hook*, 38 F.3d at 781. This warning by the Supreme Court in *Shaw* concerning ERISA's limits has been explained as follows:

> The Court's warning in *Shaw* on the limits of ERISA preemption stems from the Court's view that ERISA's scope, though comprehensive, remains subject to the traditional principle of federalism. In determining ERISA's preemptive scope, the Court has advised that we "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system."

*Id.* (citations omitted). Although cognizant of ERISA's broad preemptive scope, the court noted that ERISA does not "reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan." *Id.* at 784.

The Fifth Circuit has provided additional guidance concerning preemption as follows:

> It is clear that ERISA preempts a state law cause of action brought by an

ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. We have also held in this circuit that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been mislead. Although finer discernments might be made, these and similar cases binding in this circuit, which have found preemption of a plaintiff's state law causes of action, have at least two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Memorial Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236, 245 (5th Cir.1990) (citations omitted). State law is not preempted by ERISA, however, "when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." *Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir.1999). State law claims by a hospital for "breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the hospital seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the hospital." *Id.*

### APPLICATION OF ERISA PREEMPTION

Here, we have third-party health care providers asserting breach of contract

claims based on their own contracts with the defendant. Plaintiffs agree their claims would be preempted if they had asserted them as assignees of the plan participants, and although plaintiffs may be entitled to seek relief as assignees of the ERISA plan beneficiaries for payment of services, this lawsuit was not filed in that capacity. Instead, plaintiffs maintain their claims stem from a contractual relationship directly between them and the defendant, i.e., the Speciality Care Physicians Agreements, and are not relying, in whole or in part, upon their position as assignees of the benefits of any claimant under an ERISA plan. Defendant contends this argument ignores the fact that "their services are paid based on the benefits available under the terms of the respective ERISA plans and that payment for their services are funded through those plans." Defendant believes the plaintiffs' claims are really claims for the recovery of benefits under the plans and as such, are derivative of the participants' rights to benefits under the plans which are properly recharacterized as federal claims arising under ERISA.

Based on *Transitional Hosps.*, 164 F.3d at 955, when coverage exists, the court must "take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." The court found, in that case, that the breach of contract claims based upon the failure to pay the full amount of benefits due under the terms of the policy were preempted by ERISA. *Id.* However, there is no mention in the opinion of a Speciality Care Agreement existing between the plaintiff hospital and the defendant Blue Cross & Blue

Shield, and it appears the hospital based its claim on an assignment from an ERISA plan participant.

In conducting its own research on the issue presented here, this Court was able to find one published opinion in which the court was asked to "determine whether the claims of medical providers against a health care plan for breach of their provider agreements are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA")." *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1047 (9th Cir.1999). In affirming the dismissal by the district court for lack of subject matter jurisdiction, the court concluded as follows:

> the fact that these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans does not convert their claims into claims for benefits under ERISA-covered health care plans, and that the medical providers' claims do not otherwise fall within ERISA's express preemption clause.

The litigation in *Anesthesia Care* arose from a fee dispute between four medical providers, who participated in a medical care plan offered by defendant Blue Cross, and Blue Cross. *Id.* at 1048. Blue Cross entered into a standardized contract, called the Participating Physician Agreement, with physicians. Under the agreement, Blue Cross agreed to identify the participating physicians in the information it distributed to the members of the Plan and direct its subscribers to those physicians. In return, the physicians agreed to "accept payment from Blue Cross for services rendered to Prudent Buyer Plan Subscribers according to specified fee schedules."[1] *Id.*

---

1. With regard to payment, the provider agreements provided: " 'PHYSICIAN shall seek payment only from BLUE CROSS for the provision of Medical Services,' except pursuant to specified exceptions. The provider agreements also stated that 'PHYSICIAN

Blue Cross contended the providers' right to receive remuneration from Blue Cross depended on "the assignment of the right to benefits for payment for medical services from their patients, some of whom are beneficiaries of ERISA-covered health plans." *Id.* at 1050. Therefore, Blue Cross maintained plaintiffs claims regarding the fee provisions were claims for benefits under the terms of ERISA benefit plans and fell within 502(a)(1)(B). *Id.* The court rejected that claim holding, "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within 502(a)(1)(B)." The court explained the issue before it concerned the terms of the provider agreements and the contention the agreement was breached, and that "the patients simply are not parties to the provider agreements between the Providers and Blue Cross. The dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount,* or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051. Because the Providers asserted state law claims "arising out of separate agreements for the provision of goods and services," the court found "no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan" even though beneficiaries

covered by ERISA plans assigned their right to reimbursement to the Providers. *Id.* at 1052. Analogously, plaintiffs here assert a claim for the amount or level of payment and not the right to payment by stating, "[w]hile PRUDENTIAL paid an amount of money to the Plaintiffs herein for the services rendered, it did not pay the agreed upon amount, but shortchanged the physicians and OSASA on most, if not all of the services that were provided, paying to them less than the amount that had been agreed upon by the parties." It would appear therefore, that plaintiffs claims also would not be preempted.

A similar result was reached in an unpublished opinion from a United States District Court in the Eastern District of Louisiana. In *Lakeland Anesthesia, Inc. v. Louisiana Health Serv. & Indemnity Co.,* No. Civ.A.00–1151, 2000 WL 1801834 (E.D.La. Dec.6, 2000), the plaintiffs sought damages for the "alleged willful and/or negligent breach of contract in failing to timely make payment for services rendered." *Id.* at *1. In their motion to remand plaintiffs alleged:

> Blue Cross wrongfully: (a) delayed their claims for payment; and, (b) in some instances, denied the claims on the erroneous pretense that they had not been timely submitted. Plaintiffs submit that this suit does not challenge the denial of payment on the basis that the services rendered by plaintiffs were not "covered services", nor does it dispute the denial of "benefits" that might have been due

agrees to accept the fee schedule as provided in Exhibit B, attached and made part of this Agreement or PHYSICIAN's covered billed charges, whichever is less, as payment in full for all Medical Services provided to Members.' " *Anesthesia Care,* 187 F.3d at 1048. Here, the agreement provided: "PruCare shall compensate Speciality Care Physician for covered health care services based on the lesser of: (1) his/her usual and customary billed charges; and (2) the maximum amount

specified in the Fee Schedule. Speciality Care Physician agrees that in no event, including but not limited to, non-payment by PruCare insolvency, or breach of This Agreement, shall Speciality Care Physician bill, charge, collect a deposit form [sic], seek compensation, remuneration or reimbursement from or have any recourse against enrolees/Covered Persons [sic] or persons acting on their behalf for services provided pursuant to This Agreement."

and owing to any ERISA participant or beneficiary. Moreover, plaintiffs argue that this suit does not seek to recover benefits due under ERISA governed health plans, nor have the plaintiffs attempted to stand in the shoes of any ERISA participant or beneficiary, by assignment or otherwise. Although the plaintiffs may have the right, in some cases, where an assignment has been obtained, to elect to claim benefits under…ERISA, the plaintiffs' claim that the present lawsuit is an independent cause of action which arises, not out of the patient's right to claim benefits, but out of separate and independent obligations owed by Blue Cross to Lakeland and Medical Advantage, pursuant to separate and independent agreements between Blue Cross and plaintiffs.

*Id.* In response, defendants argued plaintiffs claims were completed preempted because they involve the improper processing of benefits due under ERISA plans. *Id.* at *3. In response, plaintiffs argued:

> As health care providers, the contractual relationships are not contemplated by ERISA. The plaintiffs are not parties to any health insurance plans formed under ERISA. Therefore, plaintiffs have no "relationship" that might be governed by ERISA. Without such a relationship, ERISA preemption must not be invoked. Plaintiffs maintain that this suit is identical to the previous four suits in which this Court remanded to state court. Like its predecessors, the defendants can demonstrate, at best, an indirect effect on an ERISA plan which is insufficient to trigger preemption.

*Id.* at *3. In granting the motion to remand, the court found the plaintiff was not suing as a participant or beneficiary of an ERISA plan or pursuing claims as an assignee of a plan but was pursuing claims based upon its separate provider agreement. *Id.* at *8. Plaintiffs here also appear to be only asserting their claims under their separate agreements.

As additional support for finding the types of claims asserted by the plaintiffs are not preempted, the Court reviewed an article concerning the role of providers in this era of managed care. The following discussion concerning ERISA preemption was instructive:

> To combat the breach of contract claim by providers, managed care defendants may argue that the claims are preempted under ERISA, in that they "relate to" ERISA plans, such that the compensatory damages sought by the providers would be precluded. While such a defense has repeatedly been asserted in actions brought by individual providers, however, it appears to be unsuccessful, so long as the provider is pursuing his own contractual rights and not stepping in the shoes of his patient.

D. Brian Hufford, *Health Care Litigation What You Need to Know After Pegram MANAGED CARE LITIGATION: THE ROLE OF PROVIDERS,* 1216 PLI/CORP. 487, 497 (November 2000). Following a discussion of the opinion in *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.,* 187 F.3d 1045 (9th Cir.1999), the author found the conclusion reached by the Ninth Circuit supported as follows:

> This conclusion [*Anesthesia Care*] is supported by the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 832–33, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) where the Court recognized two types of civil actions that may be brought against ERISA plans: the first being enforcement actions under Section 502 of ERISA by specified parties, including plan "participants and beneficiaries," to obtain statutory relief under the Act; and the second being "lawsuits

against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," all of which involve claims brought by non-ERISA entities and which "[a]lthough obviously affecting and involving ERISA plans and their trustees," and are not preempted by ERISA. Actions by network providers seeking to enforce their contracts with insurance companies arguably fall within the latter category. To the extent providers are not being paid the amount to which they are entitled under their contracts, they are suing on their own behalf as creditors—not on behalf of their patients—and are thereby entitled to do so.

A number of cases have reached analogous decisions, many of which permit providers who allege that they have been misled by managed care companies concerning whether their patients were covered by insurance to proceed outside of ERISA. The critical question for the courts is whether the provider's claim is based on a direct cause of action against the managed care company, in which situation it is not preempted, or whether it is derivative to the patient's cause of action, where ERISA applies. See, e.g., *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 249–50 (5th Cir.1990)("Simply put, ... health care providers in this country were not a party to this bargain [in which limitations on the right to sue are accepted in exchange for ERISA's protections]....We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect—

or affect only tangentially—the ongoing administration of the plan.").

*Id.* at 498–99.

Based on the foregoing, this Court concludes plaintiffs' claims as presently asserted are not preempted by ERISA and therefore, this Court does not have subject matter jurisdiction. See *Gutierrez v. Deloitte & Touche, L.L.P.*, No. SA–00–CA–708–FB, 2001 WL 760602 (W.D. Tex. Mar. 19, 2001, docket no. 23)(to be published)(recognizing the limited jurisdiction of federal courts and remanding case because actions under which plaintiffs alleged accounting malpractice not covered by the Securities Law Uniform Standards Act).

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (docket # 2) is GRANTED and this case is REMANDED to the 166th Judicial District Court of Bexar County, Texas. It is further ORDERED that the Clerk of the Court send a certified copy of this order to the clerk of the state court. Plaintiffs' request for costs are DENIED.

It is so ORDERED.