

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# Pascack Valley Hosp v. Local 464A UFCW

Precedential or Non-Precedential: Precedential

Docket No. 03-4196

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Pascack Valley Hosp v. Local 464A UFCW" (2004). *2004 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PASCACK VALLEY HOSPITAL,
INC.;
COMMUNITY MEDICAL CENTER,
(LAWRENCE TAYLOR, DEBRA
SAVERINO)

v.

LOCAL 464A UFCW WELFARE
REIMBURSEMENT PLAN

Pascack Valley Hospital, Inc.,

Appellant

_____

On Appeal From The United States
District Court
For The District Of New Jersey
(D.C. Civil Nos. 02-cv-05974
& 03-cv-02813)

District Judge: The Honorable Dennis
M. Cavanaugh

_____

Argued June 16, 2004

_____

Before: ALITO, SMITH, and
WALLACE, *Circuit Judges**

(Filed: November 1, 2004)

Shea H. Lukacsko
Keith R. McMurdy (Argued)
Grotta, Glassman & Hoffman
75 Livingston Avenue
Roseland, NJ 07068

John Sydlar
Maloof, Lebowitz, Connahan & Oleske
127 Main Street
Chatham, NJ 07928

*Counsel for Appellant*

John M. Agnello
Kerrie R. Heslin
Carella, Byrne, Bain, Gilfillan,
  Cecchi, Stewart & Olstein
5 Becker Farm Road
Roseland, NJ 07068

Michael T. Anderson (Argued)
Davis, Cowell & Bowe
1701 K Street, N.W.
Suite 210
Washington, DC 20006

*Counsel for Appellee*

_____

* The Honorable J. Clifford Wallace,
Senior Circuit Judge for the United
States Court of Appeals for the Ninth
Circuit, sitting by designation.

## OPINION

SMITH, *Circuit Judge.*

This case presents a question of jurisdiction under the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Pascack Valley Hospital (the "Hospital") sued the United Food and Commercial Workers International Union Local 464A, AFL-CIO Group Reimbursement Welfare Plan (the "Plan") in state court for breach of contract. The Plan removed the case to federal district court and moved for summary judgment. The Hospital moved to remand. The District Court held that the Hospital's breach of contract claims against the Plan were completely pre-empted by ERISA and therefore raised a federal question supporting removal under 28 U.S.C. § 1441(a). We hold that, under the well-pleaded complaint rule, the Hospital's complaint does not present a federal question that would support removal. We further hold that the Hospital's state law breach of contract claims are not completely pre-empted by ERISA's civil enforcement provision because the Hospital could not have brought its claims under ERISA. We will therefore vacate the judgment of the District Court and remand to that court with instructions that it, in turn, remand these proceedings to the state court whence they came.

### I.

The Plan is an "employee welfare benefit plan" as defined by ERISA. 29 U.S.C. § 1002(1).[1] The Plan is a reimbursement plan only; it reimburses participants and beneficiaries for out-of-pocket medical expenses but does not itself provide medical care.

MagNet, Inc. is an independent consultant. MagNet has organized a network of hospitals that have agreed to accept discounted payment for medical services provided to beneficiaries of group health plans in return for the plans' promise to encourage beneficiaries to use network hospitals. Network hospitals do not contract directly with the plans. Instead, MagNet enters into separate contracts with individual plans, and separate contracts with individual hospitals.

Around 1995, the Plan entered into

---

[1] An ERISA Plan is a legal entity that can sue and be sued. 29 U.S.C. § 1132(d)(1). Accordingly, the term "Plan" refers not only to the defendant in the underlying lawsuit and the appellee before this Court, but also to the underlying "[r]ules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services" that make up an employee welfare plan. *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000).

a "Subscriber Agreement" with MagNet. In 1996, the Hospital entered into a "Network Hospital Agreement" with MagNet. Section 2.1 of the Subscriber Agreement governs "Hospital payment," and provides that the discounted rate offered by the Hospital will be forfeited unless claims are timely paid:

> Subscriber . . . shall pay Network Hospitals for Covered Services furnished to Eligible Persons.
>
> Pursuant to a valid assignment from Eligible Person, Subscriber . . . shall directly pay Network Hospitals for Covered Services provided to Eligible Persons within thirty (30) days after date of receipt of submitted Clean Claims. . . .
>
> For other non-clean claims, payment shall be made within thirty (30) days of receipt of all records and other information necessary for proper claims adjudication.
>
> . . .
>
> Where obligated, if Subscriber fails to pay within the appropriate time frame, the Subscriber acknowledges that it will lose the benefit of the MagNet discounted

reimbursement rate and that Network Hospital is then entitled to bill and collect from Subscriber and Eligible Person its customary rate for services rendered. If Subscriber fails to make the payment, the Network Hospital may pursue any remedies available against Subscriber and Eligible Person.

In 1999, the Hospital provided medical services to Kimberly Rovetto and Betty Psaras. Both Psaras and Rovetto were "Eligible Persons" under the Subscriber Agreement, and the medical services provided to Psaras and Rovetto were "Covered Services" under the Subscriber Agreement. The Hospital alleges that the Plan failed to pay the Hospital for the services rendered to Psaras and Rovetto according to the terms of the Subscriber Agreement. The Hospital contends that claims for those services were properly submitted on April 15, 1999, and October 5, 1999. The Hospital further contends that it received payment on these claims at the discounted rate on June 8, 1999, and November 22, 1999, respectively. According to the Hospital's interpretation of § 2.1 of the Subscriber Agreement, the Plan's failure to pay these claims within thirty days of receipt effected a forfeiture of the discounted rate provided in the Network Hospital Agreement. The Hospital therefore seeks to recover the allegedly forfeited discount from the Plan.

2

On October 23, 2002, the Hospital filed suit in the Superior Court of New Jersey.

The Complaint alleges that the Hospital is a third-party beneficiary to the Subscriber Agreement between MagNet and the Plan, under which the Plan "became obligated to pay [the Hospital] for eligible medical services provided by [the Hospital]," and "was required to comply with certain terms and conditions of [the Hospital's] contract with MagNet [*i.e.*, the Network Hospital Agreement], requiring payment in the time period specified in said contract." The two-count complaint alleges that the Plan breached this contract by improperly taking a discount on the services provided to Psaras and Rovetto despite the Plan's failure to make timely payment under the Subscriber Agreement.[2]

The Plan removed the case to the District Court. Thereafter, the Plan moved for summary judgment and the Hospital cross-moved to remand the case to state court. The parties' motions focused on whether, under the doctrine of "complete pre-emption," the Hospital's state law breach of contract claims raised a federal question. The District Court heard oral argument on the parties' motions on September 25, 2003. The next day, on September 26, 2003, the District Court issued an Opinion and Order granting the Plan's motion for summary judgment, denying the Hospital's cross-motion to remand, and dismissing the complaint without prejudice. The District Court's two-page Opinion and Order states in relevant part:

> Defendant believing that Plaintiff's state law claims are completely preempted by [ERISA] in that Plaintiff now stands in the shoes of the Plan's beneficiaries as assignee, and therefore Defendant believes the facts show it is entitled to judgment as a matter of law; and

> Plaintiff believing the action is not preempted by ERISA since Plaintiff is not a participant or beneficiary under ERISA and therefore there is no federal law claim, and therefore the matter should be remanded to the state court; and

> This Court being in agreement with and adopts the reasoning of counsel for Defendant as stated on the record, and further rejects the arguments put forth by counsel for Plaintiff; and

---

[2] The Plan incorrectly states that "[t]he Hospital's complaint only claims unjust enrichment." Appellee's Br. at 2, 21-22. Although the Complaint does allege that the Plan "has been unjustly enriched to the detriment of [the Hospital]," the Complaint explicitly alleges that the Plan "breached" its contractual obligations to the Hospital.

3

This Court agrees with and adopts the analysis and holding as set forth in *Charter Fairmount Institute, Inc. v. Alta Health Strategies*, 835 F. Supp. 233; and

This Court being satisfied that [the doctrine of complete preemption] having been met in this case; and

As this case falls within the "complete preemption" exception to the well pleaded complaint doctrine, removal to federal court was proper, and remand to state court would be inappropriate . . . .

(Footnote omitted). The Hospital filed a timely notice of appeal on October 22, 2003.

## II.

Before turning to the District Court's removal jurisdiction, we must first address our own appellate jurisdiction. Although the District Court purported to grant summary judgment in favor of the Plan, the District Court actually dismissed the Hospital's complaint without prejudice. That disposition allowed the Hospital, which emphatically disavows an ERISA claim for benefits, to replead its complaint under ERISA's civil enforcement provision. The Hospital

declined to do so and instead filed this appeal.

28 U.S.C. § 1291 provides this Court with jurisdiction over a final order dismissing a complaint as completely pre-empted. *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 445 (3d Cir. 2003). "Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976) (per curiam).[3] If the plaintiff elects to stand on the dismissed complaint, however, the order of dismissal is final and appealable. *Id.* at 951-52. At oral argument, counsel for the Hospital declared the Hospital's intention to forego any ERISA claim it may have and to stand on its complaint. Counsel's declaration is sufficient to render the District Court's order final and appealable. *Remick v. Manfredy*, 238 F.3d 248, 254 (3d Cir. 2001). This Court exercises plenary review over a district court's exercise of jurisdiction and order of dismissal. *DiFelice*, 346 F.3d at 445;

---

[3] That the District Court also denied the Hospital's motion to remand does not make the court's order appealable. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) ("An order denying a motion to remand, 'standing alone,' is '[o]bviously . . . not final and [immediately] appealable' as of right." (quoting *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 578 (1954)).

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 268 (3d Cir. 2001).

## III.

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(a). Under the "well-pleaded complaint" rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). To support removal, "'[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983) (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)). Federal pre-emption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint. *Anderson*, 539 U.S. at 6; *Franchise Tax Bd.*, 463 U.S. at 12.

On its face, the Hospital's complaint does not present a federal question. Rather, the complaint asserts state common law claims for breach of contract. The complaint does not expressly refer to ERISA and the rights or immunities created under ERISA are not elements, let alone essential elements, of the plaintiff's claims. The possibility—or even likelihood—that ERISA's pre-emption provision, 29 U.S.C. § 1144(a),

may pre-empt the Hospital's state law claims is not a sufficient basis for removal. *Franchise Tax Bd.*, 463 U.S. at 12.[4]

The Plan argues that the Hospital's claims arise under "the federal common law" of ERISA. On several occasions, we have predicated jurisdiction on a plaintiff's invocation of the federal common law of ERISA. *Bollman Hat Co. v. Root*, 112

---

[4] Pre-emption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), must be distinguished from *complete* pre-emption under § 502(a) of ERISA, 29 U.S.C. § 1132(a). Only the latter permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule. Under § 514(a), ERISA supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court. *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). Section 514(a), therefore, does not permit removal of an otherwise well-pleaded complaint asserting only state law claims. *Pryzbowski*, 245 F.3d at 275 ("[W]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." (internal quotation omitted)).

F.3d 113, 115 (3d Cir. 1997); *Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033-34 (3d Cir. 1988); *N.E. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154-55 (3d Cir. 1985) (Becker, J., writing for himself). These cases, however, do not support the Plan's argument that removal is proper because "suits between plans and third parties implicating benefits administration 'arise under' ERISA's federal common law." Appellee's Br. at 54. Instead, the plaintiffs in these cases deliberately invoked federal ERISA jurisdiction. *See Bollman Hat*, 112 F.3d at 115 (lawsuit seeking to enforce subrogation provision in ERISA plan); *Airco*, 850 F.2d at 1031 (amended complaint asserting cause of action for unjust enrichment under ERISA); *ILGWU*, 764 F.2d at 150, 154-55 (lawsuit seeking declaratory relief regarding the meaning of terms in an ERISA plan). As such, their well-pleaded complaints necessarily arose under federal law. Here, the Hospital's complaint asserts a state law claim for breach of contract, and the federal common law of ERISA does not provide an element—essential or otherwise—of such a claim. The Plan may be correct that, in interpreting the Subscriber Agreement, the federal common law of ERISA displaces state law. Nevertheless, potential defenses, even when anticipated in the complaint, are not relevant under the well-pleaded complaint rule. *Franchise Tax Bd.*, 463 U.S. at 10-12.

## IV.

Although the well-pleaded complaint rule would ordinarily bar the removal of an action to federal court where federal jurisdiction is not presented on the face of the plaintiff's complaint, the action may be removed if it falls within the narrow class of cases to which the doctrine of "complete pre-emption" applies. *Aetna Health Inc. v. Davila*, 542 U.S. __, No. 02-1845, slip op. at 5 (June 21, 2004); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). As a "corollary of the well-pleaded complaint rule," complete pre-emption recognizes "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64; *accord Anderson*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

ERISA's civil enforcement mechanism, § 502(a), "is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Davila*, slip op. at 7 (quoting *Taylor*, 481 U.S. at 65-66). As a result, state law causes of action that are "within the scope of . . . § 502(a)" are completely pre-empted and therefore removable to federal court. *Taylor*, 481 U.S. at 66; *DiFelice*, 346 F.3d

6

at 446. The Supreme Court has recently clarified the inquiry in such cases:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, slip op. at 8 (internal quotation and citation omitted).

Accordingly, this case is removable only if (1) the Hospital could have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the Hospital's claim. *Id.* "[A] federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pryzbowski*, 245 F.3d at 274 (internal quotation omitted).

A.

We conclude that the Hospital could not have brought its claims under § 502(a) because the Hospital does not have standing to sue under that statute. Section 502(a) of ERISA allows "a participant or beneficiary" to bring a civil action, *inter alia*, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[5] By its terms, standing under the statute is limited to participants and

beneficiaries.[6] *Franchise Tax Bd.*, 463

---

[5] Section 502(a) provides other causes of action not relevant on this appeal. The Plan makes no argument that the Hospital could have brought this action under any other provision of § 502(a).

[6] A participant is defined as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers

7

U.S. at 27 ("ERISA carefully enumerates the parties entitled to seek relief under § 502 . . . ."). The parties agree that the Hospital is nether a participant nor a beneficiary, and that the Hospital does not have standing under ERISA to sue in its own right.

The parties dispute whether, under the law of this Circuit, the Hospital can obtain standing under § 502(a) by virtue of an assignment of a claim from a participant or beneficiary.[7] We need not resolve this dispute, however, because there is nothing in the record indicating

---

employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8).

[7] In particular, the parties disagree over whether this Court's opinion in *ILGWU* forecloses derivative standing under § 502(a). Though the *ILGWU* Court denied the claimant's plan federal question jurisdiction to sue to recoup paid medical benefits from a second plan, 764 F.2d at 153, part of the Court's rationale was that the claimant had not, in fact, assigned her claim to her plan. *Id*. at 154 n.6. Therefore, while the *ILGWU* Court expressed "serious doubts whether [the claimant] could assign along with her substantive rights her right to sue in federal court," *id.*, the Court could not so hold.

District courts in this Circuit have disagreed over the scope of *ILGWU*. *Compare Allergy Diagnostics Lab. v. The Equitable*, 785 F. Supp. 523, 526-27 & n.3 (W.D. Pa. 1991) (citing Footnote 6 of *ILGWU* for the proposition that assignees of beneficiaries do not have standing to sue under § 502(a)), *and Health Scan, Ltd. v. Travelers Ins. Co.*, 725 F. Supp. 268, 269-70 (E.D. Pa. 1989) (same), *with Commonwealth of Pa. Dep't of Public Welfare v. Quaker Med. Care & Survivors Plan*, 836 F. Supp. 314, 317 (W.D. Pa. 1993) (observing that given the facts of *ILGWU*, Footnote 6 is non-binding dicta in cases involving an actual assignment), *and Charter Fairmount Inst., Inc. v. Alta Health Strategies*, 835 F. Supp. 233, 238 (E.D. Pa. 1993) (same).

Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan, *see e..g., Tango Transport v. Healthcare Fin.* Servs., 322 F.3d 888, 891 (5th. Cir. 2003) (collecting cases), but as the issue is not squarely before us, we express no opinion on it.

8

that Psaras and Rovetto did, in fact, assign any claims to the Hospital.

As the party seeking removal, the Plan bore the burden of proving that the Hospital's claim is an ERISA claim. *DiFelice*, 346 F.3d at 452. Accordingly, the Plan bore the burden of establishing the existence of an assignment. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001). The Plan concedes that the record contains no evidence of an express assignment, whether oral or written, from either Psaras or Rovetto to the Hospital. Instead, the Plan argues that "[t]he MagNet contract itself establishes the Hospital's claim as an assignment from the participant." Appellee's Br. at 25. Essentially, the Plan argues that (1) under the Subscriber Agreement, "[the Hospital's] only right to demand money from the Plan comes from the participant's assignment of her right to reimbursement," Appellee's Br. at 16, 24; (2) therefore, the Hospital must be suing on an assignment from Psaras and Rovetto.

The Plan's argument is a *non sequitur*. Whether the Subscriber Agreement requires the Hospital to obtain an assignment in order to demand payment from the Plan says nothing about whether an assignment was in fact made. Because neither Psaras nor Rovetto are parties to the Subscriber Agreement, that document cannot, in and of itself, establish an assignment of their claims. At best, the Plan's interpretation of the Subscriber Agreement provides an affirmative defense to the Hospital's breach of contract claims, *i.e.*, that the Plan has no contractual liability absent a valid assignment. The Plan's argument may therefore entitle it to judgment on the Hospital's breach of contract claims in a court of competent jurisdiction. It does not, however, convert those breach of contract claims into derivative claims for benefits under § 502(a).[8]

Nor can we find an actual assignment based on any other documents in the record.

Section 5 of the Summary Plan Description, entitled "How Benefits Will Be Paid," provides: "If you qualify for hospital care and are entitled to reimbursement, *and the hospital has sent in an assignment executed by you*, we will

---

[8]  The parties vigorously dispute whether the Subscriber Agreement requires the Hospital to obtain an assignment before the Plan is obligated to make payment. We express no opinion on the merits of this dispute. Nor do we express any opinion on other disputes regarding the interpretation of the Subscriber Agreement. For example, the Plan argues that there is no direct contractual relationship between itself and the Hospital. The question on appeal is whether the Hospital could have brought its claim under § 502(a). If it could not, then removal was improper, and the Plan's arguments on the merits, including its argument that no contract exists, can only be adjudicated in state, not federal, court.

9

pay the hospital directly . . . ." Thus, the Plan itself contemplates an independent act by which a participant or beneficiary assigns his or her claim to the Hospital. The record contains no evidence that Psaras or Rovetto undertook such an act.

The Plan offers the certification of Kathy Pridmore, the Plan's Director of Medical Benefits, to support a finding of an assignment. Pridmore broadly declares that, in her experience, the Plan has "consistently followed the claims and claim review procedures" contained in the Summary Plan Description. The Plan argues that Pridmore's declaration constitutes evidence of "routine practice" that supports an inference of an assignment. *See* Fed. R. Evid. 406. We disagree. Pridmore does not declare that the Plan routinely receives assignments prior to payment. In her recitation of the Plan's "standard procedure for processing claims," she does not even mention the execution of assignments by Plan participants or beneficiaries. As such, Pridmore's certification cannot establish a routine practice relevant to this appeal, let alone satisfy the Plan's burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence.

Because the Plan has failed to demonstrate that the Hospital obtained an assignment from Psaras and Rovetto, we do not reach the "standing-by-assignment of claim" issue. Therefore, the Plan cannot demonstrate that the Hospital has standing to sue under § 502(a). As a result, the Hospital's state law claims could not have been brought under the scope of § 502(a) and are not completely pre-empted by ERISA. *E.g.*, *Hobbs*, 276 F.3d at 1243; *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001); *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933-34 (9th Cir. 1994).

B.

We further conclude that the Hospital's state law claims are predicated on a legal duty that is independent of ERISA. *See Davila*, slip op. at 8. The Hospital's claims, to be sure, are derived from an ERISA plan, and exist "only because" of that plan. *Id.* at 11. The crux of the parties' dispute is the meaning of Section 2.1 of the Subscriber Agreement, which governs payment for "Covered Services furnished to Eligible Persons." Were coverage and eligibility disputed in this case, interpretation of the Plan might form an "essential part" of the Hospital's claims. *Id.*

Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) (suit for breach of individual employment contract, even if defendant's action also constituted a breach of an entirely separate collective bargaining agreement, not pre-empted by § 301 of the

10

Labor Management Relations Act).

We find instructive the Ninth Circuit's opinion in *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999). In that case, the court held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not completely pre-empted under ERISA. *Id.* at 1051-52. The court reached this conclusion notwithstanding "the fact that these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans." *Id.* at 1047, 1052.

The litigation in *Anesthesia Care* arose from a fee dispute between four health care providers and Blue Cross. *Id.* at 1048. Blue Cross had entered into "provider agreements" with physicians in which Blue Cross agreed to identify the providers in the information it distributed to beneficiaries of the plan and to direct beneficiaries to those providers. In return, the providers agreed to accept payment for services rendered to beneficiaries according to specified fee schedules. When Blue Cross attempted to change the fee schedules, the providers filed a class action in state court alleging a breach of the provider agreements. *Id.* at 1049.

The Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do

not fall within § 502(a)(1)(B)." *Id.* at 1050. The court explained:

> *[T]he Providers are asserting contractual breaches . . . that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross.* The dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements.

*Id.* at 1051 (first emphasis added). Because the Providers asserted "state law claims arising out of separate agreements for the provision of goods and services," the court found "no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan." *Id.* at 1052.[9]

---

[9] The reasoning in *Anesthesia Care* was followed in *Orthopaedic Surgery Associates of San Antonio, P.A. v. Prudential Health Care Plan, Inc.*, 147 F. Supp. 2d 595 (W.D. Tex. 2001). The facts in *Orthopaedic Surgery* are nearly identical to this case. In *Orthopaedic Surgery*, health care providers entered

The facts of this case are similar to *Anesthesia Care* in important respects: (1) the Hospital's claims in this case arise from the terms of a contract—the Subscriber Agreement—that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the [Hospital], but the *amount*, or level, of payment, which depends on the terms of into contracts with a healthcare plan, Prudential. Under the contracts, Prudential agreed to pay the providers for services rendered to beneficiaries of the plan. When Prudential allegedly paid the providers less than the agreed upon amount, the providers sued for breach of the physician agreements. *Orthopaedic Surgery*, 147 F. Supp. 2d at 597. The District Court in *Orthopaedic Surgery* remanded the case to state court, concluding that § 502(a) did not completely pre-empt the providers' claims. Citing *Anesthesia Care*, the court characterized the providers' claims as "claim[s] for the amount or level of payment and not the right to payment." *Id.* at 601. The court rejected Prudential's argument that, since the medical services that were allegedly unpaid were provided to participants or beneficiaries of ERISA plans, the providers' claims sought benefits payable under the terms of those plans.

the [Subscriber Agreement]." *Id.* at 1051.

### C.

We have not overlooked the apparent convergence between the Hospital's breach of contract claim and a claim for benefits under § 502(a). Because the Plan is a reimbursement plan, the payments made to the Hospital *are* the benefits received by Psaras and Rovetto under the Plan. As a result, it would appear that any claims the Hospital could have obtained by assignment from Psaras and Rovetto would be for the same amount as the breach of contract claims that are the subject of this appeal. Moreover, had the Hospital successfully sued Psaras and Rovetto for the payments due, it would appear that any claims for reimbursement that Psaras and Rovetto would have against the Plan would be claims for benefits under § 502(a). Indeed, one of the principal reasons why courts have allowed participants and beneficiaries to assign their claims under § 502(a) is to avoid the necessity of providers suing patients in the first instance. *See Cagle*, 112 F.3d at 1515.

Nevertheless, the absence of an assignment is dispositive of the complete pre-emption question. Although the Hospital "may not defeat removal by omitting to plead necessary federal questions in a complaint," *Franchise Tax Bd.*, 463 U.S. at 22, it is clear that the Hospital is asserting a claim that could not be asserted under the civil enforcement

12

provision of ERISA. It may very well be that the Hospital's breach of contract claim against the Plan will fail under state law, or that the Hospital's state law claims are pre-empted under § 514(a). These matters, however, go to the merits of the Hospital's breach of contract claim, which can only be adjudicated in state court.

IV.

Under the well-pleaded complaint rule, the Hospital's complaint does not present a federal question that would support removal. The complaint does not expressly refer to ERISA or the federal common law of ERISA, and the rights or immunities created under ERISA are not elements, let alone essential elements, of the plaintiff's claims. Moreover, the Hospital's state law breach of contract claims are not completely pre-empted by ERISA's civil enforcement provision, because the Hospital could not have brought its claims under that provision. Accordingly, removal in this case was improper, and the order of the District Court denying remand will be vacated. We will remand this case to the District Court with instructions that the District Court, in turn, remand to the Superior Court of New Jersey.

Pascack Valley Hospital, Inc. v. Local 464A

No. 03-4196

ALITO, Circuit Judge, concurring in the judgment.

I concur in the judgment based on the decision in N.E. Dept't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir. 1985). Although there is now substantial contrary authority, we are bound by prior panel decisions of our Court until they are overruled.

The Court avoids the question whether an assignee can assert a claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), by holding that there is insufficient evidence to support a finding that there were assignments in this case. I disagree. While the summary judgment record does not contain any express assignments of the claims at issue, there is ample evidence to support a finding that the claims were assigned to the Hospital. What happened here is very common. Participants of a health care plan received treatment from a provider; the participants did not pay for those services but instead gave the provider the information needed to bill their plan; the provider then billed the plan pursuant to a contract obligating the plan to pay the provider on the assigned claims of participants; and the plan paid, albeit at a discounted rate. These facts are more than sufficient to prove that the claims were implicitly assigned to the provider. In holding that the summary judgment record

13

is insufficient to prove assignments, the Court ignores the obvious reality of the situation.