OPINION OF THE COURT
RENDELL, Circuit Judge.
We are once again called upon to determine whether a lawsuit claiming medical negligence is completely preempted by the civil enforcement provision of the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1132(a). Joseph V. DiFeliee, Jr., appeals the order of the United States District Court for the Eastern District of Pennsylvania dismissing his complaint against Aetna/U.S. Healthcare, Inc. (“Aetna”) for negligent conduct in regard to his medical treatment for sleep apnea and upper airway obstruction. DiFeliee filed suit in state court, alleging that Aetna’s instruction to his treating physician that a specially designed tracheosto-my tube was “medically unnecessary” and Aetna’s insistence that he be discharged from the hospital before his attending physician deemed it appropriate amounted to negligent conduct under state law. Aetna removed the ease to federal court on the basis of ERISA preemption and then moved to dismiss the claim. The District Court, relying on our decision in Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir.2001), held that the claim was completely preempted and dismissed it in its entirety. For the reasons that follow, we will affirm in part and reverse in part.
I.
DiFeliee participates in an ERISA-gov-erned employee welfare benefit plan that is administered by Aetna, a health maintenance organization (“HMO”). Under the terms of this plan, DiFeliee is entitled to certain “Covered Benefits.” Unless there is a specific provision for a particular type of treatment, a benefit is only covered if, in the determination of Aetna, it is “Medically Necessary.” “Medically Necessary” is a defined term, meaning the service or supply must be “care or treatment as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply;” must be “related to diagnosis of an existing illness or injury;” may “include only those services and supplies that cannot be safely and satisfactorily provided at home;” and, “as to diagnosis, care and treatment[, must] be no more costly (taking into account all health expenses incurred in connection with the service or supply) than any equally effective service or supply.”
In March 2001, DiFeliee was diagnosed with “sleep apnea/upper airway obstruction,” for which he required a tracheosto-my tube.[1] His doctor, Dr. Michael Picar-iello, surgically inserted a tracheostomy tube to eliminate the obstruction, but that tube continually came out. Dr. Picariello then placed an order for a specially designed tube. However, Aetna instructed Dr. Picariello that the special tube was “medically unnecessary.” Instead of ordering the special tube, the doctor then inserted a different tube, which caused DiFeliee severe pain and resulted in an infection. DiFeliee was later admitted to Chester County Hospital for treatment, but, the complaint avers, was thereafter discharged “at Aetna’s insistence.”[2]
*445 DiFelice filed a five-count complaint in the Philadelphia Court of Common Pleas against Aetna, his treating physicians, and the hospital. In Count I, he alleged that Aetna negligently interfered with his medical care “by instructing Dr. Picariello that the specially designed tracheostomy tube he deemed necessary was medically unnecessary for [DiFelice] and improperly interfering with Dr. Pieariello’s medical decision concerning the tracheostomy tube and insisting on [DiFelice’s] discharge from the [hospital] ... before his attending physician was planning on discharging [him].” The other counts involved claims against parties other than Aetna. Aetna removed the case to the District Court on the grounds that the claim against it was completely preempted under ERISA and then moved to dismiss. DiFelice opposed the motion to dismiss and moved to remand to state court.
The District Court denied DiFelice’s motion to remand and granted Aetna’s motion to dismiss as to Count I, and granted the motion to remand on the remaining counts against the other parties. The Court held that the disposition of Count I was “squarely controlled by the Third Circuit’s decision in Pryzbowski, ” in which we held that a claim challenging the “administration of or eligibility for benefits” was completely preempted by section 502(a)(1)(B) of ERISA. Pryzbowski, 245 F.3d at 273. The Court reasoned that the claim against Aetna was completely preempted because DiFelice was challenging Aetna’s decision that he was not entitled to the special tube under the Plan, which was entirely a matter of administration, and because Aetna was not actually involved in providing any medical services to DiFelice. DiFelice appeals the District Court’s order dismissing Count I.
II.
We have jurisdiction over the District Court’s final order pursuant to 28 U.S.C. § 1291, and review the Court’s exercise of jurisdiction and order of dismissal de novo. Pryzbowski, 245 F.3d at 268. Aetna bears the burden of proving the federal jurisdiction it seeks. Spectacor Mgt. Group v. Brown, 131 F.3d 120, 127 (3d Cir.1997). In reviewing the complaint, we must accept as true all of DiFelice’s factual allegations and draw all reasonable inferences therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir.2000).
DiFelice challenges the District Court’s removal jurisdiction over Count I of his complaint and asks us to remand to state court. He argues that his negligence action against Aetna is entirely a matter of state law and provides no basis for removal. Aetna counters that DiFelice’s negligence action is in fact nothing more than an action to recover benefits due under his plan, and as such is completely preempted by the civil enforcement provision of ERISA, section 502(a).
A. Framework
Under the “well-pleaded complaint” rule, federal question jurisdiction only exists where an issue of federal law *446 appears on the face of the complaint. Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). However, there is an exception to this rule: when a purportedly state-law claim “comes within the scope of [an exclusively] federal cause of action,” it “necessarily ‘arises under’ federal law,” and is completely preempted. Id.; see also Beneficial Nat’l Bank v. Anderson, — U.S. —, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) (explaining the preemptive effect of ERISA). The question before us is therefore whether DiFeliee’s claims of state law negligence on the part of Aetna fall within the scope of the federal causes of action provided in section 502(a) of ERISA, that is, whether the claims could have been brought under that section. If so, then the existence of the federal claim would provide the basis for federal question jurisdiction but at the same time would require dismissal based on complete preemption.
We have had numerous occasions to consider the question of whether a plaintiffs claim against an HMO is covered by section 502(a) and is therefore completely preempted. See, e.g., Pryzbowski, 245 F.3d at 273-75; Lazorko v. Pa. Hosp., 237 F.3d 242, 250 (3d Cir.2000); In re U.S. Healthcare, Inc., 193 F.3d 151, 162-63 (3d Cir.1999); Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 358 (3d Cir.1995). Determining whether a claim could have been brought under ERISA has proven to be anything but an exact science. In fact, as my colleagues’ concurring opinions point out all too well, the exercise seems to have taken on a life of its own, and not a very satisfying or productive life at that. In any event, the statute and our case law chart the path we must follow.
Section 502(a) allows for civil actions to be brought “by a participant or beneficiary ... to recover benefits due to him under the terms of his plan.” 29 U.S.C. § 1132(a)(1)(B). The line between an action to recover benefits, which challenges an administrative decision regarding whether a certain benefit is covered under an ERISA plan, and an action alleging negligence or malpractice, which challenges the medical treatment actually provided to a patient, is a blurry one. We have been continually refining the precise test we use in evaluating such claims.
Most recently, in Pryzbowski, we synthesized the discussions contained in our previous opinions and adopted preferable new terminology. We explained that in the past we had attempted to distinguish between claims directed at the quality of benefits received - that is, as to the treatment - which would not fall within section 502(a), and claims that the plans erroneously withheld a quantum of benefits due - focusing on the administration of the plan - which would be completely preempted. Pryzbowski, 245 F.3d at 272. Following this “quality-quantity” rubric, we had held that an allegation that an HMO had failed to exercise reasonable care in providing medical treatment was not preempted, Dukes, 57 F.3d at 358; an allegation that an HMO’s policy of discharging newborns within 24 hours after their delivery was essentially a medical determination and was not preempted, In re U.S. Healthcare, 193 F.3d at 163; and an allegation that an HMO’s financial disincentives discouraged medical providers from hospitalizing a mentally ill woman was a “quality of care” claim because it occurred in the course of a treatment decision, and was therefore not preempted. Lazorko, 237 F.3d at 250.
However, in Pryzbowski, we found the “quality-quantity” distinction unclear, and suggested that more helpful terminology was utilized by the Supreme Court in Pe- *447 gram v. Herdrich, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Although we recognized that Pegram “concerned fiduciary acts under ERISA and not preemption,” we found useful “the distinction made there between eligibility decisions, which turn on the plan’s coverage of a particular condition or medical procedure for its treatment,” and “treatment decisions, which are choices in diagnosing and treating a patient’s condition,” and determined that the distinction was “equally applicable for complete preemption analysis.” Pryzbowski, 245 F.3d at 273 (quoting Pegram, 530 U.S. at 228, 120 S.Ct. 2143) (emphasis added and internal quotations omitted). We then explained,
Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action.

Id.

Using this nomenclature, it was evident to us in Pryzbowski that “a claim alleging that a physician knowingly delayed in performing urgent surgery ... would relate to the quality of care,” while on the other hand, “a claim alleging that an HMO declined to approve certain requested medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits.” Id. (citing Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1488-89 (7th Cir.1996)). However, we were presented there with claims that fell somewhere in between: that an HMO had negligently delayed approval of an out-of-network specialist, and that it had failed to supervise properly its employees to make “thoughtful and reasonable decisions as to healthcare.” Id. at 274. Were those claims based on a treatment decision or on a determination as to eligibility for a benefit? We explained that “[i]n analyzing whether a claim falling between the[ ] two poles is completely preempted, it is necessary to refer to § 502(a).” Id. at 273. Paring the issue down to its essence, we stated that the relevant question must be whether the claim “could have been the subject of a civil enforcement action under § 502(a).” Id. If it could have, then it was a plan benefit claim, and Congress has clearly expressed its intent that the claim be preempted by ERISA. Id. (citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).
Because the claims in Pryzbowski fell between the two poles, we took extra care to examine the complaint for “artful pleading,” to ensure that Pryzbowski was not disguising an eligibility claim that could have been brought under ERISA as a state law negligence claim. We explained that, although the claim might be “ostensibly directed at the provision of medical treatment,” we needed to “look beyond the face of the complaint to determine whether [Pryzbowski had] artfully pleaded his suit so as to couch a federal claim in terms of state law.” Id. at 274 (quoting Jass, 88 F.3d at 1488); see also Franchise Tax Bd., 463 U.S. at 22, 103 S.Ct. 2841 (“[A] plaintiff may not defeat removal [to federal court] by omitting to plead necessary federal questions in a complaint.”). The ultimate question was whether, when the basis for the claim was properly understood, the claim fell under ERISA.
After carefully examining Pryzbowski’s complaint for the true bases of his claims, we held that his claims were completely preempted. First, regarding the delayed approval, we concluded that underlying the *448 HMO’s allegedly negligent activities was a policy decision regarding payment to and approval of out-of-network specialists, a decision that fell “within the realm of the administration of benefits.” Pryzbowski, 245 F.8d at 273. We explained that this claim could have been brought under ERISA because “[h]ad Pryzbowski sought to accelerate [the HMO]’s approval of the use of out-of-network providers, she could have sought an injunction under § 502(a) to enforce the benefits to which she was entitled under the plan.” Id. at 273-74. Further, her claim that the HMO had “failed to properly hire, train, and supervise its employees to make thoughtful and reasonable decisions as to healthcare” was also preempted because, reading behind the artful “medical negligence” pleading, the complaint did not allege that the HMO or its employees had actually engaged in any medical treatment. Id. at 274. Because the HMO’s only role was in administering Pryzbowski’s benefits, it could not possibly have been negligent in providing treatment. Id. Unlike the situation in which an HMO fills dual roles as an administrator of benefits and a provider of services, and might therefore actually engage in medical treatment, the HMO there was acting solely as an administrator. Id.
Pryzbowski thus instructs us to determine whether a claim is preempted under section 502(a) by first examining whether the claim falls at either of the two poles, entirely treatment or entirely administrative. If based solely on a medical treatment decision, then the claim is not preempted. If based on an HMO administrator’s eligibility decision, then the claim is preempted. In the more difficult situation in which the claim falls somewhere in between, we must scrutinize the complaint for “artful pleading,” and then refer to section 502(a) itself and determine whether the actual alleged wrongdoing underlying the cause of action could have formed the basis of a suit under that section.
As discussed more fully below, when we apply the Pryzbowski framework to the complaint before us, we conclude that Di-Felice’s claim that Aetna “interfered with” his medical treatment by declaring the special tube “medically unnecessary” is preempted by ERISA because it could have been brought as an action under section 502(a). However, because it appears that DiFelice’s claim that he was discharged “at the insistence of Aetna” does not rest on any discharge policy set forth in the Plan, or any agreed benefit, it would not be encompassed within the relief available under section 502(a) and is therefore not completely preempted.
B. The Tracheostomy Tube
We will first examine DiFelice’s claim that Aetna interfered with Dr. Picariello’s medical decision regarding the special tube. Under Pryzbowski, the first question is whether Aetna’s “medical necessity” determination is clearly either a medical treatment decision or an eligibility decision. DiFeliee has couched this claim in terms of Aetna’s negligent interference with his care, which seems to imply that Aetna itself engaged in medical treatment. However, DiFelice’s complaint does not include any allegation that Dr. Picariello was an agent of Aetna, that Aetna did not exercise reasonable care in monitoring Dr. Picariello’s care, or that Aetna itself provided medical treatment; rather, his claim rests on Aetna’s “instruction” to Dr. Picariello “that the specially designed tracheostomy tube he deemed necessary was medically unnecessary,” a direct reference to the “medical necessity” determination called for in the Plan. Looking behind DiFelice’s use of language sounding in negligence, he is alleging that Aetna wrongfully denied him coverage for the *449 special tube. Thus, the complaint has aspects of treatment and coverage. That is, in making its determination, Aetna necessarily had to exercise some medical judgment, i.e., it had to determine whether the special tube was “as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply, ... [was] related to diagnosis of an existing illness or injury, ... [and was] no more costly (taking into account all health expenses incurred in connection with the service or supply) than any equally effective service or supply.” However, here there is no allegation that Aetna actually provided the medical care, and Aetna’s use of medical judgment could only have led to an eligibility, not a treatment, decision.
Because the decision here was in some sense both a medical treatment and an eligibility decision, thus falling between the two poles discussed in Pryzbowski, we must refer to section 502(a) and determine whether DiFelice’s claim regarding the tube could have been the subject of a civil enforcement action under ERISA. Pryzbowski, 245 F.3d at 273. Clearly, it could have been. DiFeliee could have challenged Aetna’s “medical necessity” determination by filing a claim under 502(a)(1)(B) “to recover benefits due to him under the terms of his plan,” and arguing that the special tube was in fact “medically necessary,” and was therefore a “covered benefit.” He could have requested an injunction forcing Aetna to pay for the special tube, or alternatively, paid for the tube himself and then later filed an action for reimbursement. Numerous ERISA participants have in fact brought such actions challenging their HMO’s “medical necessity” determinations and seeking to recover benefits they alleged were due under their plans. See, e.g., Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 762-63 (2d Cir.2002) (reviewing claim under section 502(a) challenging HMO’s determination that sex change operation was not “medically necessary”); Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 814-15 (7th Cir.2002) (reviewing claim under section 502(a) challenging HMO’s determination that custodial care was not “medically necessary”); Kopicki v. Fitzgerald Auto. Family Employee Benefits Plan, 121 F.Supp.2d 467, 480 (D.Md.2000) (granting preliminary injunction to prevent HMO from denying preauthorization for cancer treatment it had deemed not “medically necessary”); see also Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1253 (3d Cir.1993) (reviewing claim under section 502(a) challenging an HMO’s determination that a liver/pancreas treatment was an “experimental procedure”). DiFelice’s claim falls squarely within this jurisprudence. Because DiFelice’s claim that Aet-na improperly deemed his special tube to be “medically unnecessary” could have been brought under section 502(a), it is completely preempted by ERISA. We will therefore affirm the District Court’s exercise of removal jurisdiction and its order dismissing Count I as to Aetna’s conduct regarding the tracheostomy tube.
DiFeliee urges that this result is inconsistent with the Supreme Court’s decision in Pegram and our decisions in U.S. Healthcare and Lazorko. We disagree.
In Pegram, the Supreme Court answered the question whether an HMO may be liable for a breach of fiduciary duty when its physician owners make “mixed eligibility and treatment decisions.” Pegram, 530 U.S. at 229, 120 S.Ct. 2143. There, a physician, who was also an owner of the HMO that covered her patient, waited to order an ultrasound for the patient’s inflamed appendix, and the appendix ruptured. Id. at 215, 120 S.Ct. 2143. The patient sued the HMO for breach of fiduciary duty, alleging that the HMO created *450 an incentive for the physicians to make decisions in their own financial interests, rather than in the exclusive interests of the plan participants. Id. The Court held that HMOs do not act as “fiduciaries” as envisioned by ERISA when their physician owners make decisions that touch both on the patient’s medical treatment and the patient’s eligibility for benefits under the plan. Id. at 218, 120 S.Ct. 2143.
The Court first set forth a framework for understanding the kinds of acts that physician owners acting on an HMO’s behalf might undertake. On the one hand are “pure ‘eligibility decisions’ ” turning on the plan’s coverage for a particular medical treatment, and on the other are “treatment decisions,” choices about how to go about diagnosing and treating a patient’s condition. Id. at 228, 120 S.Ct. 2143. In between are situations in which the “eligibility decision and the treatment decision [are] inextricably mixed,” that is, when an eligibility decision necessarily rests on the “physicians’ judgments about reasonable medical treatment.” Id. The Court found that it was presented with just such a “mixed” decision: the physician owner had determined that the patient’s “condition did not warrant immediate action; the consequence of that medical determination was that [the HMO] would not cover immediate care.” Id.
Having concluded that the decision before it was a “mixed” decision, the Court went on to hold that an HMO’s physician owners do not act as fiduciaries under ERISA when making such decisions. Id. at 231, 120 S.Ct. 2143. The Court focused on the nature of “fiduciaries,” explaining that these mixed decisions are not “fiduciary in nature,” and bear “only a limited resemblance to the usual business of trustees.” Id. The Court feared that a contrary result would open the floodgates to malpractice suits against HMOs and individual physicians under the guise of ERISA breach of fiduciary duty claims, and would erode the distinction between state malpractice and federal ERISA actions. Id. at 235-36, 120 S.Ct. 2143.
Although, as we noted above, Pegram, set forth helpful terminology for preemption analysis, see Pryzbowski, 245 F.3d at 273, the Court’s holding that a “mixed” determination made by a physician owner does not subject an HMO to liability for breach of fiduciary duty does not translate to, or govern in, the preemption context. Rather, Pegram sets a standard for when liability is to be imposed on individuals acting in a fiduciary capacity. It does not presume to encompass ERISA claims enforcement as such. In fact, the Pegram Court specifically stated that it was not discussing the standards governing a claim that a patient had been wrongfully denied benefits due under a plan nor the interaction between such a claim and state law causes of action. Pegram, 530 U.S. at 229 n. 9, 120 S.Ct. 2143; accord Roark v. Humana, Inc., 307 F.3d 298, 308 (5th Cir.2002) (stating that the Supreme Court has not decided whether section 502(a)(1)(B) preempts a medical malpractice claim involving “mixed decisions,” but holding under Fifth Circuit law that it does not). In fact, it could be argued that allowing plaintiffs to do an end-run around ERISA by permitting them to couch plan decisions that have some impact on treatment in negligence terms would have a similar effect of undermining ERISA as was feared by the Court in Pegram. We remain convinced that, after Pryzbowski, we look at what decisions are subject to enforcement, which is a radically different inquiry from when can an HMO be sued for breach of fiduciary duty.[3]
*451 We are also not persuaded that U.S. Healthcare and Lazorko - both of which pre-date Pryzbowski and rely on the “quality-quantity” distinction - compel a different result. In U.S. Healthcare, we held that a suit against an HMO challenging its policy of pre-certifying a twenty-four hour discharge of mother and newborn was not preempted by ERISA because it went to the quality of the health care provided. U.S. Healthcare, 193 F.3d at 162. Significantly, we noted that the plaintiffs did not allege “a failure to provide or authorize benefits under the plan,” nor did they claim “that they were denied any of the benefits that were due under the plan.” Id. Rather, they alleged that the HMO was negligent in adopting the discharge policy and in supervising the physicians with whom they contracted for services, and that the HMO’s incentive structure adversely affected the physicians’ medical judgment regarding when newborns should be discharged. The plaintiffs were not seeking to enforce benefits they thought were due to them under the plan; they were challenging the discharge policy itself and the HMO’s actions “in its role as a provider or arranger of medical services,” not in its role as administrator of benefits. Id. at 163. The HMO’s “policy and incentive structure were such that the [patients] never had the option of making an informed decision as to whether to pay for the hospitalization themselves, as would occur in a situation in which coverage is sought and denied.” Id. Although we analyzed the claims in U.S. Healthcare under the “quality-quantity” rubric, our holding squares with the preemption framework we later set forth in Pryzbowski Because the plaintiffs in U.S. Healthcare were not suing for any benefits due under the plan, but rather were challenging the plan itself, they could not have sued under section 502(a), and therefore, even under Pryzbowski their claims would not have been preempted.
Lazorko involved a similar issue. There, we held that a claim that financial disincentives imposed by an HMO discouraged medical providers from hospitalizing a patient who later committed suicide was a “quality of care” claim and therefore not preempted. Lazorko, 237 F.3d at 249-250. We noted that Lazorko was not claiming that the HMO plan was supposed to include hospitalization, but rather that her doctor was influenced in his decision-making by the incentive structure. Id. As in U.S. Healthcare, the patient could not *452 have sued under ERISA because she never had the option of seeking continued hospitalization - her doctor, as influenced by the HMO policy, did not offer it to her. Id.
Unlike in U.S. Healthcare and Lazorko, here, DiFelice is suing based on denial of a benefit he claims he was due under the Plan. He is not claiming that Aetna negligently adopted a particular policy regarding tracheostomy tubes or imposed an incentive structure that interfered with his physician’s independent medical judgment. Rather, he claims that the special tube was not “medically unnecessary,” and that Aet-na wrongfully determined that it was, a claim that is based on the language of the Plan and pertains to the nature of benefits provided. Unlike the plaintiffs in U.S. Healthcare and Lazorko, DiFelice sought and was denied coverage for a benefit, and could have paid for the benefit himself and sued under section 502(a) for reimbursement.
Because under our most recent controlling precedent, Pryzbowski, DiFelice’s claim that Aetna was negligent in determining that the special tube was “medically unnecessary” could have been the subject of a suit under section 502(a) for benefits due under the Plan, his claim is preempted by ERISA.[4] We will therefore affirm the District Court’s exercise of removal jurisdiction and subsequent dismissal of the claim with respect to the tube.
C. The Discharge from the Hospital
Count I also includes a claim that Aetna improperly interfered with DiFelice’s medical treatment by “insisting on [his] discharge from the [hospital] ... before his attending physician was planning on discharging [him].” The District Court did not address this aspect of the claim in its order dismissing the complaint.
Unlike his claim regarding the tracheostomy tube, DiFelice does not allege that Aetna deemed the hospital stay to be “medically unnecessary” and therefore not covered by the Plan. The claim also does not appear to rely on a discharge policy in the Plan or any agreed benefit. Indeed, it is difficult to tell from DiFelice’s vague pleadings what precisely he is alleging that Aetna did or the form this “insistence” took. If Aetna in some way forced the hospital to discharge him, or imposed financial incentives like those in U.S. Healthcare and Lazorko that unduly affected his physician’s judgment, then Di-Felice has pled a negligence cause of action that is not preempted by ERISA.
At the dismissal stage, it was Aetna’s burden to prove federal jurisdiction by proving that this is an ERISA claim. See Spectacor Mgt. Group, 131 F.3d at 127. There is nothing apparent from the pleadings that would foreclose DiFelice from *453 being able to prove that the discharge decision was not a plan benefit. Unlike his claim that the tube was erroneously determined to be “medically unnecessary” under the Plan, this claim on its face is not plan-related. Therefore, because DiFel-iee’s claim of “insistence” on the discharge could give rise to state law negligence liability, we hold that it is not completely preempted by section 502(a) of ERISA.
Aetna argues that, even if DiFeliee’s hospital discharge claim is cognizable as a state law cause of action, we should uphold the District Court’s dismissal of that claim on the alternative ground that it is nonetheless expressly preempted by virtue of section 514 of ERISA, 29 U.S.C. § 1144(a), which provides that ERISA “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan” covered by the statute. However, “[u]nlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.” Lazorko, 237 F.3d at 248. As we have determined that the hospital discharge claim is not preempted by section 502(a), we do not have jurisdiction over that claim. Rather, the question of whether the hospital discharge claim will be controlled by federal law pursuant to section 514 must be decided by the District Court on remand, should it choose to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), or by the state court. See Pryzbowski 245 F.3d at 276 (where District Court has jurisdiction over one claim by virtue of preemption under section 502(a), it has discretion to decide whether to exercise supplemental jurisdiction over claims arising from the same factual predicate or remand to state court).
III.
Because DiFeliee’s claim that Aetna interfered with his medical treatment by finding the special tracheostomy tube to be “medically unnecessary” could have been brought under section 502(a) of ERISA for the recovery of benefits due under his plan, it is completely preempted. We will therefore affirm the order of the District Court dismissing that claim. However, because Aetna has not shown that DiFel-iee’s claim that Aetna interfered with his medical treatment by insisting on his discharge from the hospital is based on any plan benefit, that claim is not completely preempted. We will therefore reverse the District Court’s order dismissing that claim and remand for further proceedings.

. Our recitation of the facts is derived from DiFeliee's complaint.

. DiFeliee objects to our consideration of the *445 terms of the Plan in determining whether his complaint should be dismissed because he does not reference the Plan in his complaint, and Aetna did not argue below that the Plan provisions were dispositive. However, in ruling on a motion to dismiss, we may consider an extrinsic document that is "integral” to the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997). Here, DiFelice’s reference to "medical necessity” is clearly derived from the terms of the Plan. Furthermore, even if Aetna did not explicitly argue that the Plan provisions controlled the decision in this case, Aetna attached the Plan as an exhibit to its brief and motion before the District Court. DiFelice was certainly on notice that the Plan terms were integral to Aetna’s argument.

. We note that other federal courts of appeals have followed different paths in determining *451 whether a claim is preempted under section 502(a). Some have concluded, on the facts before them, that a suit challenging a "medical necessity” determination was preempted, see Marks v. Watters, 322 F.3d 316, 326-27 (4th Cir.2003) (holding that a suit against an HMO utilization review case manager was completely preempted under section 502(a) because the HMO did not actually provide medical treatment); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1489 (7th Cir.1996) (holding that a negligence claim against an HMO utilization review case manager was completely preempted because the claim was "in effect a claim for denial of benefits”), and some have concluded that it was not. See Land v. CIGNA Healthcare of Fla., 339 F.3d 1286, 1293 (11th Cir.2003) (holding that claims that an HMO failed to correctly diagnose a condition and authorize proper medical treatment were tort claims outside of the scope of section 502(a)); Cicio v. Does, 321 F.3d 83, 102 (2d Cir.2003) (concluding that under Pegram, a state law medical malpractice action based on a “mixed” decision is not preempted by ERISA when the state law cause of action "challenges an allegedly flawed medical judgment as applied to a particular patient’s symptoms”); Roark v. Humana, Inc., 307 F.3d 298, 309 (5th Cir.2002) (holding that a claim that an HMO had failed to use ordinary care in making a medical necessity determination sounded in tort and was not preempted). We believe that the framework we set forth in Pryzbowski provides the controlling method of analysis here and compels the conclusion that DeFelice’s claim regarding the tube is preempted.

. Aetna argues that the Supreme Court’s decision in Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), compels this result, but we find that case to be inapposite. The Court in Moran was faced with an Illinois statute that provided HMO participants "with a right to independent medical review of certain denials of benefits,” id. at 359, 122 S.Ct. 2151, and required HMOs to provide any service that the independent reviewing physician deemed "medically necessary.” Id. at 361, 122 S.Ct. 2151. The Court held that "it was beyond serious dispute” that the statute "related to” an ERISA plan and was therefore preempted under 29 U.S.C. § 1144(a), but went on to hold that the statute was saved from preemption under 29 U.S.C. § 1144(b)(2)(A) because it regulated insurance. Id. at 365-66, 122 S.Ct. 2151. Thus, the Court was not faced with the question of whether a suit challenging an HMO's medical necessity determinations would be preempted under ERISA absent a particular state statute that imposed additional burdens on the HMO, which is the issue before us here.