**Maureen KURTEK and Joseph Kurtek, Appellants.**

v.

**CAPITAL BLUE CROSS and Capital Advantage Insurance Company, Appellees.**

No. 05–4325.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 23, 2007.

Filed March 1, 2007.

Melissa A. Scartelli, Scartelli & Distasio, Scranton, PA, Edward J. Ciarimboli, Fellerman Law Offices, Kingston, PA, for Appellants.

Joel C. Hopkins, Saul Ewing, Harrisburg, PA, for Appellees.

BEFORE: SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

OPINION OF THE COURT

FUENTES, Circuit Judge.

Maureen Kurtek and her husband Joseph allege that Maureen suffered injuries resulting from the failure of defendants Capital Blue Cross and Capital Advantage Insurance Company (collectively "Capital") to approve a medical treatment in a timely fashion. The Kurteks now appeal the District Court's determination that their state law claims are preempted by the federal Employee Retirement Income Security Act ("ERISA"). For the reasons that follow, we will affirm.

**I.**

Maureen Kurtek was diagnosed with Lupus in 1989 and has undergone regular treatment since that time. Based on her doctor's recommendation, she received in-

travenous immunoglobulin (IV IG) therapy in five sessions from June to December 1998.[1] She was administered IV IG therapy again in July 1999 and September 2002. The IV IG treatments alleviated symptoms of joint pain, butterfly rash, photosensitivity, and fatigue. All three of the treatments were paid for by Pennsylvania Blue Cross Blue Shield, her insurance carrier at the time.

On January 1, 2003, Capital became the Kurteks' health insurance provider. After meeting with her doctor on January 17, Maureen contacted Capital to obtain preauthorization for another recommended IV IG treatment. According to the Kurteks, this treatment required a two-day stay in the hospital and cost $14,000. A representative told her that the procedure appeared to be experimental and that Capital would contact her when a decision had been made. Maureen made several follow-up calls in the next few weeks, but was told each time the matter was being researched.

On February 28, Maureen Kurtek developed flu-like symptoms and was taken to the emergency room the next day for what proved to be acute catastrophic antiphospholipid antibody syndrome ("APLS").[2] Once stabilized, she was transferred to another hospital in critical condition and diagnosed with multi-organ system failure. As part of her treatment, the hospital administered her IV IG therapy. On March 11, while still an inpatient at the hospital, she received a voicemail from Capital stating that the IV IG therapy would be covered as long as it was medically necessary.

In November 2004, Maureen and her husband filed a complaint in Pennsylvania state court asserting that the catastrophic APLS event would not have occurred—or at least would have been "dramatically diminished"—had Capital granted authorization for the IV IG therapy in a timely fashion. They allege that she suffered numerous injuries as a result of this delay, including: "prolonged hospitalizations, tracheotomy, pulmonary failure, renal failure, sepsis, gangrene, damage to her sinus, transmetatarsal amputation of the right foot, osteomyelitis, loss of the tips of her index fingers, and neuropathy." App. 34. The Kurteks claim these conditions will require "daily [drug] injections into her belly, future sinuses surgery, and ... medical care, attention, and monitoring for the remainder of her life." *Id.* The complaint also asserts that she suffers from anxiety and depression. Joseph Kurtek seeks damages for loss of consortium and emotional distress.

Capital removed the case to federal court on the basis that ERISA preempts the Kurteks' state law claims. Capital then moved to dismiss the case, while the Kurteks moved to remand to state court. On June 13, 2005, the District Court determined that the state law claims were preempted by ERISA, but provided the Kurteks with thirty days to file an amended complaint pleading an ERISA cause of action. Instead, they filed a motion for reconsideration, which the District Court denied on August 12, 2005, while giving the Kurteks twenty days to file an amended complaint. They failed to do so, and on September 15, 2005, the Court granted a motion by Capital to dismiss the case.

Soon thereafter, the Kurteks filed this appeal which challenges the denials of their motion to remand and motion to re-

---

1. IV IG therapy has been used to treat numerous autoimmune diseases, including Lupus.

2. APLS is a disorder of coagulation that causes blood clots in arteries and veins. Catastrophic APLS involves multiple and rapid organ dysfunction.

consider. We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review. *See Werwinski v. Ford Motor Co.,* 286 F.3d 661, 665 (3d Cir.2002); *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 268 (3d Cir.2001). Because we agree with the District Court that ERISA preempts the state law claims in this case, we will affirm.

## II.

The Supreme Court has explained that "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (internal quotation marks omitted). Section 502(a) of ERISA allows participants in qualified plans "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C § 1132(a)(1)(B). Any cause of action that falls within the scope of these civil enforcement provisions is removable to federal court. *Davila,* 542 U.S. at 209, 124 S.Ct. 2488.

We have held that "claims that merely attack the quality of benefits do not fall within the scope of § 502(a)'s enforcement provisions and are not completely preempted, whereas claims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme." *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 272 (3d Cir.2001); *see also Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 356–57 (3d Cir.1995). The Kur-

teks argue on appeal that in delaying approval of the IV IG therapy, Capital made a medical decision affecting the quality of benefits that Maureen Kurtek received. They assert that because they do not challenge the quantity or administration of benefits, their claims are not preempted by ERISA.

Specifically, the Kurteks argue that Capital's consideration of whether a procedure is "experimental" involved a medical treatment decision pertaining to the quality of care. In *DiFelice v. Aetna U.S. Healthcare,* 346 F.3d 442 (3d Cir.2003), however, we concluded that there was preemption when an HMO determined that a special tracheostomy tube recommended by plaintiff's doctor was not "medically necessary." We held that because "DiFelice could have challenged Aetna's 'medical necessity' determination by filing a claim under [§ ] 502(a)(1)(B) 'to recover benefits due to him under the terms of his plan,'" his claim was completely preempted by ERISA. *Id.* at 449. In response, the Kurteks argue that they could not have brought their claims under § 502(a) because they challenge the delayed approval of a medical procedure, and not a denial of benefits. The Kurteks, however, could have sought an injunction under § 502(a) to accelerate the approval of the procedure or could have paid for the IV IG therapy and then sought reimbursement. *See Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 273–74 (3d Cir.2001); *DiFelice,* 346 F.3d at 449.

We also rejected a similar argument in *Pryzbowski,* where the plaintiff argued that a delay in approving her back surgery had caused her severe pain. We ruled that Pryzbowski's claims were preempted by ERISA and that "delay in approving benefits [is] conduct falling squarely within administrative function." 245 F.3d at 274. While noting that certain delays, such as a

physician waiting to perform "urgent surgery on a patient whose appendix was about to rupture," would concern quality of care, we explained that "a claim alleging that an HMO declined to approve certain requested medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits." *Id.* at 273.

Finally, the Kurteks argue that the delay of approval was a "mixed eligibility and treatment" decision, and that their claims are therefore not subject to preemption under *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). The Supreme Court, however, clarified in Davila that "it was essential to Pegram's conclusion that the decisions challenged there were truly 'mixed eligibility and treatment decisions,' *i.e.,* medical necessity decisions made by the plaintiff's treating physician *qua* treating physician and *qua* benefits administrator." 542 U.S. at 220–21, 124 S.Ct. 2488 (citation omitted). Here, of course, Maureen Kurtek's treating physician recommended that she undergo the IV IG therapy and it was Capital who delayed approval. Because Capital's decision whether to pay for the treatment and its delay in making that decision related to the administration of benefits, the Kurteks' state law claims are preempted by ERISA.

## III.

We note that a number of judges have urged Congress and the Supreme Court to revisit ERISA and its preemption scheme. As Judge Becker observed in *DiFelice,* "ERISA has evolved into a shield that insulates HMOs from liability for even the most egregious acts of dereliction committed against plan beneficiaries." 346 F.3d at 453 (3d Cir.2003) (J. Becker, concurring); *see also Davila,* 542 U.S. at 222, 124 S.Ct. 2488 (joining " 'the rising judicial chorus urging that Congress and [this] Court revisit what is an unjust and increasingly tangled ERISA regime.' " (Ginsburg, J., concurring) (quoting *DiFelice,* 346 F.3d at 453 (Becker, J., concurring)) (alteration in original)); *Cicio v. Does,* 321 F.3d 83, 106 (2d Cir.2003) (Calabresi, J., dissenting in part) ("[T]he injury that the courts have done to ERISA will not be healed until the Supreme Court reconsiders the existence of consequential damages under the statute, or Congress revisits the law to the same end."). Nevertheless, we are bound by the precedents of the Supreme Court and this Court. The Kurteks' state law claims are preempted by ERISA, and we will affirm the District Court's denial of their motion to reconsider.