

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2007

# Eichorn v. AT&T Corp

Precedential or Non-Precedential: Precedential

Docket No. 05-5461

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Eichorn v. AT&T Corp" (2007). *2007 Decisions.* Paper 1019.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1019

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-5461

—————

KURT H. EICHORN; WILLIAM J. HUCKINS; T. ROGER KIANG;
EDWARD W. LANDIS; ORLANDO NAPOLITANO, INDIVIDUALLY AND
ON BEHARLF OF ALL OTHERS SIMILARLY SITUATED; GILBERT G. DALEY;
SUSAN H. DIBONA; BETH KING; MICHAEL S. ORATOWSKI;
THOMAS L. SALISBURY; LAWRENCE WALSH, individually and on
behalf of all others similarly situated; WILLIAM LAWLESS;
RUSSELL LEPPALA; GABE P. TOROK; JUDITH B. BRUGNER; KATE HARRIS;
CAROLE T. JOHNSON; CHARLES O. LAUGHLIN, II; MICHAEL A. MCFARLAND;
BARBARA OLIVER; GARY PATTERSON; ROBERT PROUIX; WILLIAM J.
SCHROTT; ROBERT MICHAEL SHEPHERD; RONALS A. SOKOL; JOSEPH T.
SZLASA; DIANE F. TAYLOR; LORRAINE J. WELCH; MARIE ZEITS,
                                                    Appellants

v.

AT&T CORP.; LUCENT TECHNOLOGIES INC.; TEXAS PACIFIC GROUP;
NCR CORPORATION; THE CIT GROUP, INC.; JOHN DOE CORPORATIONS 1-10

—————

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 96-cv-04674; 96-cv-03587)

—————

SUR PETITION FOR REHEARING

—————

Present:  SCIRICA, *Chief Judge*,
RENDELL, AMBRO, FUENTES, SMITH,
FISHER, CHAGARES, JORDAN and ROTH[*], *Circuit Judges*.

—————

   *As to panel rehearing only.

The petition for rehearing filed by appellants in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is denied.  Judge Ambro concurs in the decision to deny rehearing en banc and files a separate opinion attached hereto with respect to the decision to deny rehearing en banc.

BY THE COURT,

/s/ Kent A. Jordan
*Circuit Judge*

Dated: May 31, 2007
DMM/cc: Noel C. Crawley, Esq.
   David M. Fabian, Esq.
   James P. Flynn, Esq.
   Carmine A. Iannaccone, Esq.
   Robert M. Leonard, Esq.

2

AMBRO, *Circuit Judge*, concurring in denial of the petition for rehearing *en banc*.

I vote to deny rehearing *en banc* because I believe the panel decision correctly applies *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). As the panel concludes, the focus of those opinions—particularly *Mertens* and *Great-West*—is that any make-whole monetary relief that is not directly traceable to some wrongly held property is properly characterized as legal, not equitable, relief, and is thus unavailable in a 29 U.S.C. § 1132(a)(3) action. Slip. Op. at 24. Under this rubric, Eichorn's request for an adjustment of pension records that would create a payment obligation is clearly unavailable.

Though I agree with the panel's opinion, I write separately to urge Congress or the Supreme Court to revisit what Judge Becker called "an unjust and increasingly tangled ERISA regime." *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 453 (3d Cir. 2003) (Becker, J., concurring). As Justice Ginsburg noted a few years ago,

> [b]ecause the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of the "equitable relief" allowable under § 502(a)(3), a "regulatory vacuum" exists: "[V]irtually all state law remedies are preempted but very few federal substitutes are provided."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 222 (quoting *DiFelice*, 346 F.3d at 456–57) (Ginsburg, J., concurring).

Nowhere is that more apparent than this case. We held in *Eichorn I* that the plaintiffs here have produced sufficient evidence that AT&T and Lucent intentionally

3

interfered with their ERISA benefits to survive summary judgment.  *Eichorn v. Am. Tel. & Tel. Corp. (Eichorn I)*, 248 F.3d 131, 150 (3d Cir. 2001).  Now, however, we are compelled to affirm the entry of summary judgment in the defendants' favor, not because of a failure of proof, but because ERISA—as the Supreme Court interprets it—does not provide a remedy.  As the panel notes, plaintiffs asserting an interference claim can only seek injunctive relief or reinstatement;[1] they cannot seek make-whole monetary relief of any kind.  Slip. Op. at 31.  What makes this result odd is that the preferred remedy for the common law analog of this claim—interference with an expectancy—is money damages.  *See* RESTATEMENT (SECOND) OF TORTS § 774B & cmt. e.  Thus, to accept the *Mertens/Great-West* formulation is to accept that Congress specifically allowed ERISA participants to pursue a cause of action for interference but, with no relevant comment in the legislative history, disallowed the most natural remedy.  At risk of using another canine metaphor,[2] this result is odd enough that its silent passage strikes me like "the curious incident of the dog in the night-time."[3]  Moreover, as Professor John Langbein

---

[1] The panel also notes that in theory they could seek a constructive trust or equitable lien over identifiable wrongly held property, though it is most doubtful that those remedies would be appropriate in an interference claim.  *See* Slip Op. at 24 n.6.

[2] I fear that our Court has had its fill of those after the *Grier* case.  *See United States v. Grier*, 475 F.3d 556, 568 n.8. (3d Cir. 2007) (en banc); *id.* at 579–87 (Ambro, J., concurring in judgment); *id.* at 598 (Sloviter, J., dissenting); *id.* at 616 (McKee, J., dissenting).

[3]   [Gregory:] "Is there any point to which you would wish to draw my attention?"
[Sherlock Holmes:] "To the curious incident of the dog in the night-time."
"The dog did nothing in the night-time."

4

has argued, *Mertens* and *Great-West* employ a concept of "equitable relief" so narrow

that it ignores the fact that chancery courts regularly awarded monetary make-whole relief

in appropriate circumstances, particularly to trust beneficiaries. *See* John H. Langbein,

*What ERISA Means by "Equitable": The Supreme Court's Trail of Errors in* Russell,

Mertens, *and* Great-West, 103 COLUM. L. REV. 1317, 1353–62 (2003).

This case demonstrates that the *Mertens/Great-West* definition of "equitable relief"

functionally prohibits many legitimate plaintiffs from seeking an ERISA remedy. As the

panel opinion notes, it does not cut off all relief. Slip Op. at 31. Here, for example, the

District Court could have enjoined AT&T and Lucent from enforcing the anti-"bridging"

agreement. But by the time the case was ready for trial, the six-month window for

rehiring AT&T/Lucent employees had long passed, rendering such an injunction

worthless.

This result is not uncommon. Because of the complexity of much ERISA

litigation (not to mention the shortage of federal judges), it tends to move slowly. The

very predicate of an interference claim is that the defendant is keeping the plaintiff from

---

"That was the curious incident," remarked Sherlock Holmes.
. . . .
[Sherlock Holmes:] "Before deciding that question I had grasped the significance of the silence of the dog, for one true inference invariably suggests others. The Simpson incident had shown me that a dog was kept in the stables, and yet, though someone had been in and had fetched out a horse, he had not barked enough to arouse the two lads in the loft. Obviously the midnight visitor was someone whom the dog knew well." ARTHUR CONAN DOYLE, *Silver Blaze, in* THE COMPLETE SHERLOCK HOLMES 383, 400 (1938); *see also Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991).

benefits to which he would otherwise be entitled. *See* 29 U.S.C. § 1140. The longer that interference continues, the less likely it is that injunctive relief will provide a workable remedy. Even in the typical case—one in which an employee is fired to prevent benefits from vesting, *see* Slip Op. at 31—the propriety of reinstatement wanes over time as the employee ages and the nature of the employer's business changes. In these cases, time is on the defendant's side in an insidious way, for by drawing out the litigation it has a chance of mooting the entire suit. The end result is that for plaintiffs like Eichorn the case is won or lost at the preliminary injunction stage, for only that remedy will prevent the case becoming moot while discovery proceeds. This is both unfair and against the grain of our civil justice system, which couples notice pleading with liberal discovery rules to ensure that "'the gravamen of the dispute [is] brought frankly into the open for the inspection of the court.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1202 (2d ed. 1990)). Here, accepting the opportunity for discovery (or merely responding to a motions-happy defendant) can render worthless the proof the plaintiff produces. It is hard to imagine that this narrow window of relief is the result Congress intended.

Judicial[4] and scholarly[5] concern could hardly be higher.  It is time for Congress or

[4] *See, e.g.*, *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1200 (10th Cir. 2006) (McConnell, J.) (noting that *Mertens* and *Great-West* produce "lopsided results"); *Pereira v. Farace*, 413 F.3d 330, 345–46 (2d Cir. 2005) (Newman, J., concurring) (questioning the *Great-West* definition of equity); *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1266 (10th Cir. 2004) (Lucedo, J., dissenting) ("Here, reinstatement would have been an appropriate equitable remedy had McDonnell Douglas not so delayed proceedings as to make reinstatement impossible.  Thus, through no fault of their own, the class plaintiffs find themselves devoid of the undeniably appropriate equitable remedy of reinstatement."); *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d at 453 (Becker, J., concurring); *id.* at 468 (Ambro, J., concurring); *Cicio v. Does*, 321 F.3d 83, 107 (2d Cir. 2003) (Calabresi, J., dissenting); *Van Natta v. Sara Lee Corp.*, 439 F. Supp. 2d 911, 941 (N.D. Iowa 2006) (Bennett, C.J.); *Andrews-Clarke v. Travelers Ins. Co.*, 084 F. Supp. 49, 55–56 (D. Mass. 1997) (Young, J.).

[5] *See, e.g.*, Colleen E. Medill, *Resolving the Judicial Paradox of "Equitable Relief" under ERISA Section 502(a)(3)*, 39 J. MARSHALL L. REV. 827 (2006); Maria O'Brien Hylton, *Insecure Retirement Income, Wrongful Plan Administration, and Other Employee Benefit Woes—Evaluating ERISA at Age Thirty*, 53 BUFF. L. REV. 1193 (2005) (reviewing JAMES A WOOTEN, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974—A POLITICAL HISTORY (2004)); Lorraine Schmall & Nathan Ihnes, *Failure of Equity: Discriminatory Plan Closing as an Irreemediable Injury under ERISA*, 55 CATH. U. L. REV. 81 (2005); Sarah Beth Spisich, *The Aftermath of* Davila*: Are Healthcare Enrolees Now a Sinking Ship Without a Paddle?*, HEALTH LAW. 22 (Aug. 2005); James J. Budney & Corey Ditslear, *Canons of Construction and the Elusive Quest for Neutral Reasoning*, 58 VAND. L. REV. 1, 79–81 (2005); Robert F. Rich, et al., *Judicial Interpretation of Managed Care Policy*, 13 ELDER L.J. 85 (2005); Scott M. Aronson*, ERISA's Equitable Illusion: The Unjust Justice of Section 502(a)(3)*, 9 EMPLOYEE RTS. & EMPL. POL'Y J. 247 (2005); Langbein, *supra*; Judith Resnik, *Constricting Remedies: The Rehnquist Judiciary, Congress, and Federal Power*, 78 IND. L.J. 223, 256–72 (2003); John M. Teske, Note, *Damage Suits Under ERISA: Why Third Parties with Discretion over Benefit Plans Must Be Held Accountable*, 36 LOY. L.A. L. REV. 1753 (2003); Colleen P. Murphy, *Misclassifying Monetary Restitution*, 55 SMU L. REV. 1577 (2002); Daniel J.Meltzer, *The Supreme Court's Judicial Passivity*, 2002 SUP. CT. REV. 343, 383–84 & n.164; Lisa N. Bleed, Note, *Enforcing Subrogation Provisions as "Appropriate Equitable Relief" Under ERISA Section 502(a)(3)*, 35 U.S.F. L. REV. 727 (2001); Dana M. Muir, *Fiduciary Status as an Employer's Shield: The Perversity of ERISA Fiduciary Law*, 2 U. PA. J. LAB. & EMP. L. 391 (2000); Randall J. Gingiss, *The ERISA Foxtrot: Current Jurisprudence Takes One Step Forward and One Step Back in Protecting*

the Supreme Court to reconsider the interplay between the extent to which make-whole

monetary relief is available under 29 U.S.C. § 1132(a)(3) and the preemption of state-law

causes of action that could accord that relief.

_____

*Participants' Rights*, 18 VA. TAX REV. 417 (1998); Henry H. Rossbacher et al., *ERISA's Dark Side: Retiree Health Benefits, False Employer Promises and the Protective Judiciary*, 9 DEPAUL BUS. L.J. 305 (1997); Karen A. Jordan, Travelers Insurance*: New Support for the Argument To Restrain ERISA Pre-emption*, 13 YALE J. ON REG. 255 (1996); Susan J. Stabile*, The Role of Congressional Intent in Determining the Existence of Implied Private Rights of Action*, 71 NOTRE DAME L. REV. 861, 894–96 (1996); Dana M. Muir, *ERISA Remedies: Chimera or Congressional Compromise?*, 81 IOWA L. REV. 1 (1995); Susan J. Stabile*, Preemption of State Law by Federal Law: a Task for Congress or the Courts?*, 40 VILL. L. REV. 1, 33–35 (1995); Maria Linda Cattafesta, Note, Mertens v. Hewitt Associates: *Nonfiduciary Liability for Money Damages under ERISA*, 43 CATH. U. L. REV. 1165 (1994); Larry J. Pittman, *ERISA's Preemption Clause and the Health Care Industry: an Abdication of Judicial Law-Creating Authority*, 46 FLA. L. REV. 355 (1994); Robert A. Kamp, *The Argument for "Extra-Contractual" Damages under ERISA*, 82 ILL. B.J. 70 (1994); Richard Rouco, Note, *Available Remedies under ERISA Section 502(a)*, 45 ALA. L. REV. 631 (1994); Jayne Elizabeth Zanglein, *Closing the Gap: Safeguarding Participants' Rights by Expanding the Federal Common Law of ERISA*, 72 WASH. U. L.Q. 671 (1994); Gregory A. Hewett, Note, *Should Non-Fiduciaries Who Knowingly Participate in a Breach of Fiduciary Duty Be Liable for Damages under ERISA?*, 71 WASH. U. L.Q. 773 (1993).

8