# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1848

_____

Teresa Pichoff, as Special            *
Administrator of the Estate of Bruce  *
Pichoff, Deceased                     *
                                      *
            Appellant,                *
                                      *    Appeal from the United States
      v.                              *    District Court for the
                                      *    Eastern District of Arkansas.
QHG of Springdale, Inc. d/b/a         *
Northwest Health System a/k/a         *       [PUBLISHED]
Northwest Medical Center of           *
Washington County, and Triad          *
Hospitals, Inc.,                      *
                                      *
            Appellees.                *

_____

Submitted: December 10, 2008
    Filed: February 26, 2009

_____

Before MELLOY, and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

DOTY, District Judge

_____

[1]The Honorable David S. Doty, United States District Court for the District of Minnesota, sitting by designation.

Appellant Teresa Pichoff, special administrator of the estate of Dr. Bruce Pichoff, sued Dr. Pichoff's former employer, QHG of Springdale, Inc. d/b/a Northwest Health System a/k/a Northwest Medical Center of Washington County (Northwest), and Northwest's parent company, Triad Hospitals, Inc. (Triad), for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court[2] dismissed the action, and we affirm.

I.

Northwest hired Dr. Pichoff on October 30, 1998, as medical director for neonatology services. Dr. Pichoff's employment contract provided for participation in an ERISA-governed group health and welfare plan (Plan) that was underwritten by Aetna Life Insurance Company (Aetna) and administered by Triad through its TriShare Benefits program, which was outsourced to a third-party. On January 1, 2002, Dr. Pichoff elected an option for $1,050,000 in life insurance coverage.

Plan benefits generally ceased upon an employee's termination. Nevertheless, the Plan provided for an extension of life insurance benefits with no further premium payments to employees who suffered permanent and total disability. To receive the extension, the Plan required proof of disability to the underwriter no later than twelve months after the disability's onset date. The extension terminated if the employee began any work for pay or profit.

On February 5, 2002, Dr. Pichoff was diagnosed with multiple myeloma, which required him to take a medical leave of absence beginning on May 1, 2004. Unable to return to work, Northwest terminated Dr. Pichoff on January 31, 2005, without

---

[2] The Honorable Jimm L. Hendren, United States District Judge for the Western District of Arkansas.

notifying him, Aetna or the third-party Plan administrator.[3] Dr. Pichoff received no additional information regarding his rights or obligations under the Plan and did not claim an extension of his life insurance benefits.

Thereafter, Northwest senior management advised Dr. Pichoff that he could retain his $1,050,000 in life insurance coverage if he returned to work as a nonexempt part-time employee. As a result, Dr. Pichoff and Northwest entered into a two-year employment contract on April 1, 2005, that provided for group life insurance coverage. Dr. Pichoff's health, however, continued to deteriorate and he took another medical leave of absence beginning August 1, 2005. Northwest terminated his employment on February 2, 2006.

Dr. Pichoff received written notice of his termination from Northwest on February 21, 2006, and was informed that he would receive information detailing his options for continuing his benefits coverage. On February 26, 2006, Triad provided the information and notified Dr. Pichoff that he maintained only $15,000 in life insurance coverage underwritten by Sun Life Assurance Company of Canada (Sun Life).[4] Upon investigation, Dr. Pichoff learned that his $1,050,000 life insurance policy lapsed following his January 31, 2005, termination because no claim was made to Aetna to extend the Plan's coverage. Aetna and Sun Life denied Dr. Pichoff's subsequent requests to reinstate his benefits. Dr. Pichoff died on August 28, 2006.

Appellant brought this ERISA action against Northwest and Triad for breach of fiduciary duty, seeking to recover the amount of Dr. Pichoff's life insurance

---

[3] Dr. Pichoff learned of his termination from other Northwest employees in mid-February.

[4] Sun Life had replaced Aetna as the Plan underwriter.

coverage before his first leave of absence. The district court granted appellees' motion to dismiss for failure to state a claim because appellant's requested monetary relief is unavailable under ERISA.

## II.

We review de novo a district court's dismissal of an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 981 (8th Cir. 2008). We accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the nonmoving party. See Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008).

A plan participant or beneficiary may bring a civil action "to obtain other appropriate equitable relief (i) to redress . . . violations [of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). This section permits plan participants and beneficiaries to "seek equitable remedies in [their] individual capacit[ies] for a breach of fiduciary duty not specifically covered by the other enforcement provisions of section 1132." Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999) (citing Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)); see also 29 U.S.C. § 1104 (fiduciary duties). The only issue on appeal is whether the relief sought by appellant is "other appropriate equitable relief." Appellant argues that the requested relief is allowed because she seeks reinstatement of the benefits that Dr. Pichoff's estate would have received absent appellees' alleged breach of fiduciary duty.

The term "other appropriate equitable relief" is limited to relief that was "typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Assocs., 508 U.S. 248, 256-57 (1993) (emphasis omitted); see also Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1061 (8th Cir. 2006); Kerr, 184 F.3d at 943. In addition, not all monetary relief

"falling under the rubric of restitution" is available under § 1132(a)(3)(B).  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002).  Rather, whether restitution is equitable or compensatory depends on the "origin of the award sought." Knieriem, 434 F.3d at 1061.  Equitable restitution seeks to impose "a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 362 (2006) (quoting Knudson, 534 U.S. at 213).  Thus, monetary relief in the form of restitution is generally available only if the action seeks "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Knudson, 534 U.S. at 214.  To determine whether a plaintiff requests legal or equitable relief, "we ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is specifically identifiable as belonging in good conscience to the plaintiff."  Calhoon v. Trans World Airlines, Inc., 400 F.3d 593, 596-97 (8th Cir. 2005) (citations and quotations omitted).

In this case, appellees did not benefit from the lapse of Dr. Pichoff's initial life insurance policy, and they retain no funds identifiable as belonging to appellant. Rather, appellant seeks compensation for the benefits that would have been paid to Dr. Pichoff's estate had the policy not lapsed.  Such relief, however, is compensatory in nature and unavailable under § 1132(a)(3)(B).  Accord Amschwand v. Spherion Corp., 505 F.3d 342, 343, 348 (5th Cir. 2007) (section 1132(a)(3)(B) does not permit "damages in the form of payment of life insurance benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty"); Callery v. U.S. Life Ins. Co., 392 F.3d 401, 406 (10th Cir. 2004) (same).

## III.

We share appellant's concern that her claim exists in a remedy-less "regulatory vacuum" created by ERISA's broad preemption of state law claims and the Supreme

Court's narrow interpretation of "other appropriate equitable relief."  Aetna Health Inc. v. Davila, 542 U.S. 200, 222 (2004) (Ginsburg, J., concurring); see also Eichorn v. AT&T Corp., 489 F.3d 590, 591-94 (3d Cir. 2007) (Ambro, J., concurring in denial of petition for rehearing en banc); E. Daniel Robinson, Note, Embracing Equity: A New Remedy for Wrongful Health Insurance Denials, 90 Minn. L. Rev. 1447, 1449-55 (2006).  Nevertheless, we are bound by the precedent of this circuit and the Supreme Court.  Accordingly, the district court's order of dismissal is affirmed.

_____